Duquesne Light Company, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 17, 1981, before President Judge CRUMLISH and Judges CRAIG and MACPHAIL, sitting as a panel of three.

*John A. Lee,* with him *Lawrence P. Galie,* for petitioner.

*Charles Donahue,* Associate Counsel, with him *Richard Wagner,* Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, October 27, 1981:

In this unemployment compensation appeal, the employer[1] questions an award of compensation to the claimant[2] by the Unemployment Compensation Board of Review, which reversed, upon reconsideration, its earlier order which had denied benefits on the ground of voluntary quit.[3]

The claimant, who had worked for 29 years as a shop mechanic for the employer, retired from his position on October 30, 1979. Earlier that year on May 23, the employer had notified all employees by letter that, due to a change in federal law, the mandatory retirement age would no longer be age 65 but age 70; the letter stated that an employee not working past age 65 should file a retirement request form two months before a proposed retirement date. The claimant signed a request form on September 6, 1979 after being asked to do so by the supervisors in his office.

---

[1] Duquesne Light.

[2] Michael J. Abaray.

[3] Section 402(b)(1) of the Unemployment Compensation Act, Act of December 5, 1936, P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1).

The board concluded that the claimant had satisfied his burden of showing cause of a necessitous and compelling nature, stating, "the claimant voluntarily retired because under the existing labor-management agreement, the claimant would have had his fringe benefits frozen if he continued working after the age of 65."

The board found:

[U]nder the Labor-Management contract which had an expiration date of October 1, 1979 all benefits except the employe's wages would be frozen if the employee continued working after the age of 65. A new Union-Management agreement signed on October 8, 1979 effective October 1, 1979 did not change the freeze on benefits of those working beyond the age of 65.

Although the former collective bargaining agreement was silent concerning benefits after age 65, it incorporated the company pension plan, which provided for mandatory retirement at age 65. The employer subsequently revised the plan to adhere to the new federal law. Otherwise, the record does not clearly indicate any freeze of benefits by that agreement.

While the old agreement was in effect, during negotitations for the new one, the claimant testified that he spoke to his union representative[4] "to see how things would stand if I would stay after 65." The union representative told the claimant that the employer, during negotiations, had stated that *all* benefits would be frozen for employees who worked beyond age 65.[5]

---

[4] The claimant was a member of the International Brotherhood of Electrical Workers, the bargaining unit, which had a contract in effect with the employer, due to expire on October 1, 1979.

[5] Specifically, the representative told the claimant that: he would not gain any more in his pension if he stayed until age 70, the claimant's company-paid health insurance would end, his term insurance would be reduced for every year he worked past age 65, and

In view of uncontradicted testimony by the employer's witness, there is no basis for the above-quoted finding as it relates to the new agreement. The representative stated that the discussions with the union about freezing benefits were not final decisions, but proposals. Several weeks *before* the claimant's retirement date, the final collective bargaining determination was to freeze only the pensions of those who worked beyond age 65, with no freeze on the other benefits.

However, whether the claimant was in fact faced with a benefits freeze if he continued working, as the board found, or was only apprehensive of a management proposal and discussion of such action, we cannot conclude as a matter of law that those circumstances constituted cause of a necessitous and compelling nature justifying the claimant's retirement. *Sabella v. Unemployment Compensation Board of Review*, 52 Pa. Commonwealth Ct. 258, 415 A.2d 722 (1980).

The controlling case is *Unemployment Compensation Board of Review v. Holahan*, 20 Pa. Commonwealth Ct. 381, 341 A.2d 587 (1975), where a claimant argued that the elimination of certain fringe benefits by his employer as a requirement of continued employment presented necessitous and compelling cause for leaving work.[6]

---

the claimant would earn no additional vacation time for years worked after age 65.

[6] We cannot improve on Judge BLATT's summary of the facts of that case:

The claimant had been employed by the Union National Bank, Pittsburgh, since 1960. On August 25, 1973 he reached 65 years of age and began to discuss retirement under a deferred retirement plan which the bank provided. At that time the claimant was receiving a salary of $805 per month and additional benefits including employer-paid hospitalization insurance and participation in an employer profit-

In *Holahan*, upon the employee's decision to postpone retirement, the company-provided hospitalization insurance terminated, leaving coverage solely under the Medicare program; in addition, the employer ceased contributions to the employee's profit-sharing retirement plan. We held that these changes "did not present a common sense and prudent reason for leaving work."

Here the employees who chose to work beyond age 65 would actually lose less benefits than those lost by the employee in *Holahan*.

The claimant, as in *Holahan*, "will receive as much from [his] benefit plan as he could have ever expected," although he apparently would not have achieved *more* in pension benefit terms. "It cannot be said, therefore, that his voluntary retirement for the reasons he states was for cause of a necessitous and compelling nature." 20 Pa. Commonwealth Ct. at 384, 341 A.2d at 588.

We must reverse the board's award of compensation.

### ORDER

Now, October 27, 1981, the order of the Unemployment Compensation Board of Review, dated June 23, 1980, Appeal No. B-79-8-I-652, is hereby reversed.

---

sharing retirement plan to which the employer had been contributing approximately $2,000 per year. Under the employer's retirement program, an employee reaching the age of 65 could elect one of two options: 1) upon agreement with the employer, he could continue working at the same job for the same salary but would not continue to receive either the paid-up hospitalization or additional employer contributions to the profit-sharing plan; or 2) he could retire and receive the accrued retirement benefits under the profit-sharing plan. The employer here offered to continue to employ the claimant at the same job and salary, but the claimant elected to retire instead.