**Clare McCARTHY, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 17, 2003.

Decided Aug. 13, 2003.

Clare A. McCarthy, petitioner, pro se.

Maribeth Wilt Seibert, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, COHN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge COHN.

Clare McCarthy (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) that affirmed a Referee's decision denying unemployment compensation (UC) benefits on the basis that Claimant was ineligible

under Section 402(b) of the Unemployment Compensation Law (Law).[1] The issue before us is whether a claimant, who leaves her job in order to preserve her retirement health care benefits when her employer unilaterally eliminates her entitlement to those benefits, has a necessitous and compelling reason to quit. We hold that she does.

Claimant was employed as a secretary at LaSalle University (Employer) beginning in August 1984, and her last day of employment was April 30, 2002. (N.T. at 4). At the time of her departure, Claimant was earning $20,000 per year. (N.T. at 3–4). When Claimant began working for Employer, Employer's retirement health insurance policy provided that employees could have continued health insurance coverage after retirement if they had worked for Employer for 15 years and had reached age 55. (N.T. at 5). On February 20, 2002, Employer changed its health insurance policy to require all employees to reach age 65, instead of age 55, as in the previous policy, in order to receive health benefits upon retirement. The years of service requirement was not changed. Employer changed the retirement health insurance policy because of rising costs of providing health care insurance. It gave employees who had reached age 55, with 15 years of service, the option to retire by May 1, 2002 and still retain eligibility for the post-retirement health insurance coverage. (Referee Finding of Fact 3). However, if an employee in this group chose to continue employment with Employer, and then retired before reaching the age of 65, the employee would be left without employer-provided health insurance until the employee reached the age of 65.

Claimant was 60 years old with 18 years of work credit at the time Employer changed its health insurance policy and had, thus, earned eligibility for the retirement health insurance benefits. Accepting Employer's option, Claimant retired on April 30, 2002 to preserve her retirement health benefits. Claimant had planned to retire at age 62, to draw on Social Security and to have retirement health benefits provided by Employer. (N.T. at 6). She was concerned that, if she continued to work for Employer, and if she lost her job prior to age 65, she would not have health insurance coverage and would be unable to independently afford such coverage. (Referee Finding of Fact 5). Claimant could have continued to work in the capacity in which she was employed when she left Employer, had she not retired on April 30, 2002. (Referee Finding of Fact 7). Claimant filed an application for unemployment compensation benefits but it was denied. The Referee denied benefits and the Board summarily affirmed. Claimant then filed this appeal.

Claimant argues here pro se that it was legal error for the Board to deny her unemployment compensation benefits under the facts of this case. The Board argues that Employer changed *post*-employment conditions, rather than *current* employment conditions and, thus, in order to receive benefits, Claimant must show a well-founded belief that her employment was "imminently threatened." The Board asserts that Claimant failed to do so here and, therefore, is ineligible for benefits under Section 402(b) of the Law.

■ We begin our analysis [2] by noting that in an unemployment compensation

1. Act of December 5, 1936, Sec. Ex.Sess. P.L. 2897 (1937), *as amended*, 43 P.S. § 802(b).

2. Our scope of review is limited to determining whether the Board's adjudication is in

violation of constitutional rights, whether an error of law was committed, or whether the factual findings are supported by substantial evidence. *Nolan v. Unemployment Compensa-*

case, the Board is the ultimate factfinder and is empowered to make credibility determinations. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985). In making those determinations, the Board may accept or reject the testimony of any witness in whole or in part. *Greif v. Unemployment Compensation Board of Review,* 68 Pa.Cmwlth. 437, 450 A.2d 229 (1982). The Board's findings of fact are conclusive upon appeal; however, the legal conclusions drawn by the Board from its findings of fact remain subject to judicial review. *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 358, 378 A.2d 829, 832 (1977).

 Claimant asserts that the Board erred in determining that her reason for terminating employment was not of a necessitous and compelling nature. She also asserts that Employer's change in policy was a substantial, unilateral alteration in the terms and conditions of her employment, forcing her to select either continued employment or preservation of the retirement benefits she had earned and was, therefore, sufficient to establish good cause for leaving her employment. We agree.

 Section 402(b) of the Law provides that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature...." Where a case concerns a voluntary quit, in order to obtain unemployment benefits, the claimant has the burden to show that the quit was for necessitous and compelling reasons. *Taylor,* 474 Pa. at 355, 378 A.2d at 831; *PECO Energy Company v. Unem-*

*ployment Compensation Board of Review,* 682 A.2d 49 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* 547 Pa. 739, 690 A.2d 238 (1997). Whether a claimant had cause of a "necessitous and compelling nature" is an ultimate conclusion which must be drawn from the underlying findings of fact. It is, therefore, subject to appellate review. *Taylor. See also Truitt v. Unemployment Compensation Board of Review,* 527 Pa. 138, 589 A.2d 208 (1991).

 "Necessitous and compelling cause for voluntarily quitting is cause that 'results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstance to act in the same manner.' " *PECO,* 682 A.2d at 51 n. 1 (*quoting Taylor* at 358–359, 378 A.2d at 832–833). An employer's unilateral imposition of a substantial change in the terms and conditions of employment provides a necessitous and compelling reason for an employee to leave work. *Chavez v. Unemployment Compensation Board of Review,* 738 A.2d 77, 81 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 563 Pa. 704, 761 A.2d 551 (2000). "The question of whether a unilateral change in terms of employment constitutes 'cause of a necessitous and compelling nature' is subject to a substantial change analysis." *Kaolin Mushroom Farms v. Unemployment Compensation Board of Review,* 669 A.2d 438, 442 n. 3 (Pa.Cmwlth.1995) (*quoting Steinberg Vision Associates v. Unemployment Compensation Board of Review,* 154 Pa. Cmwlth. 486, 624 A.2d 237 (1993)). The ultimate determination of whether an employer's unilateral change in the terms and

*tion Board of Review,* 797 A.2d 1042 (Pa. Cmwlth.2002). Substantial evidence is that which a reasonable mind, without weighing the evidence or substituting its judgment for that of the factfinder, might accept as ade-

quate to support the conclusion reached. *Centennial School District v. Department of Education,* 94 Pa.Cmwlth. 530, 503 A.2d 1090, 1093 n. 1 (1986), *affirmed,* 517 Pa. 540, 539 A.2d 785 (1988).

conditions of employment is sufficiently substantial so as to provide a necessitous and compelling reason for employees to leave work, while contingent upon the underlying facts as found by the Board, is a question of law, fully subject to this Court's review. *Chavez.* The impact that the employer's changes have upon the employee, not the employer's reasons for instituting the changes, is the focus of the inquiry. *Steinberg Vision,* 624 A.2d at 240.

In the case *sub judice,* the referee reasoned that, since Claimant did not show that her employment was "imminently threatened," she did not have a necessitous and compelling reason to leave employment. This "imminently threatened" inquiry stems from the analysis in *PECO,*[3] where employees were given the option to select from a separation incentive plan, a retirement incentive plan, or continued employment. Both plans afforded benefits *beyond* those available under existing company policies, in order to entice employees to leave the company. *PECO,* 682 A.2d at 50. The *"enhanced"* retirement plan amended PECO's existing pension plan by adding the *additional* benefits. *Id.* The issue there was whether a claimant had a necessitous and compelling reason to terminate employment because he feared that if he continued to work and did not accept the enhanced retirement incentive plan during the window of time it was offered, he would forego obtaining any of the *extra* benefits under the enhanced plan if he eventually lost his job. The Court denied benefits because there was no evidence a layoff was imminent or in the discernible future. *Id.* at 52.

*PECO* is distinguishable from the present case because, in *PECO,* the employer was providing employees with *extra* benefits as an incentive to retire, whereas here, Claimant had *already earned* the right to her post-retirement health insurance coverage from Employer. Employer did not offer any extra or additional benefits as an incentive for early retirement, but rather *limited* the benefit already earned if Claimant did not retire. As noted above, when Claimant turned 55 and had 15 years of work credit with Employer, she was vested with the right to retire and receive health insurance coverage provided by Employer, as set forth in Employer's original policy. Because the benefit in *PECO* had not been earned, it was a future benefit, and the Court correctly applied the "imminently threatened" doctrine. However, here, Claimant had *already earned a benefit* that belonged to her; therefore, the correct analysis here is whether Employer's change in policy was a substantial and unilateral change in a current condition of employment. That the benefit for which she had qualified would take effect upon retirement does not alter the fact that, once earned, it remained a condition of her employment.[4]

 A unilateral alteration in a condition of employment must be substantial to

---

3. The Referee's decision does not cite a particular case, but rather only states that in employer incentive plan cases, "PA Courts have held that ... employees must show a well founded belief that their employment was imminently threatened." (Referee Reasoning Paragraph 4). *PECO* synthesizes the pertinent law from six cases in the area of incentives to retire with respect to such incentives providing necessitous and compelling cause to leave employment.

4. That the benefits at issue here are "retirement" health insurance benefits is superficially deceptive for purposes of analysis. While these benefits will only come to fruition as Claimant draws upon them after her employment ceases, the benefits were earned and vested while she was working and the right to them was a *present* right with a future use.

provide an employee with a necessitous and compelling reason to leave work. This substantiality is measured by the impact on the employee, and whether the change involves any real "difference" in employment conditions. In *Unemployment Compensation Board of Review v. Holohan,* 20 Pa.Cmwlth. 381, 341 A.2d 587 (1975), the Court found an absence of a necessitous and compelling reason to leave employment when an employee was given the option, upon reaching retirement age, either to continue to work without accumulating any further contributions to a profit-sharing plan or accumulating any further medical coverage or to retire with all accrued benefits. There, the claimant would have received health coverage from Medicare when coverage from his employer ceased. The very terms of employer's profit-sharing retirement plan stated that employer's contributions to the plan would cease once an employee reached age 65, whether the employee continued to work or retired. However, the funds accumulated under the plan would only become available to an employee upon retirement. In rejecting the claimant's application for benefits, the Court reasoned that, since the employer had adhered to the specifications of the benefit program, as anticipated by both employer and employee, it could not be said the benefits would be lost if the employee continued to work. It further noted that the claimant would, in fact, receive as much from the benefit plan as he could have ever expected. Finally, the Court found that the claimant could have continued working "without any real difference in the terms of his employment...." *Holohan,* 341 A.2d at 588. *Accord Duquesne Light Company v. Unemployment Compensation Board of Review,* 62 Pa.Cmwlth. 253, 436 A.2d 257 (1981) (finding no necessitous and compelling reason for claimant to leave employment when employer froze pensions of employees who kept working after age 65, be-

cause claimant would receive as much from his benefit plan as he could have ever expected, even though he would not obtain *more* payments toward his pension).

In contrast, in *Steinberg Vision,* the claimant, a diabetic, specifically negotiated a full employer reimbursement for a particular health insurance plan as a fringe benefit. When the employer determined that it could no longer afford to reimburse the claimant for her coverage under the negotiated health insurance plan, it gave the claimant the option to take a plan with significantly less coverage, or receive additional money monthly to apply to her current policy. The Court found that "[f]ull reimbursement of Blue Cross/Blue Shield insurance coverage was negotiated by the parties as a material element of the employment relationship, with a special significance to the Claimant, who relied upon the coverage for treatment of her diabetic condition and its attendant health consequences." *Id.* at 240. The Court distinguished the factual situation in *Steinberg Vision* from that of *Holohan* because the employee did, in fact, face a substantial change in a condition of employment.

Unlike the claimants in *Holohan* and *Duquesne Light,* the Claimant here would *not* be receiving "everything she could have expected" or anticipated under the changed benefit plan. What she expected was to be able to receive health insurance should she retire or not be able to continue working until age 65; however, if Claimant had continued to work for Employer under the new policy, she would have lost that. Like the situation in *Steinberg,* the retirement health benefits here were part of Employer's original, existing policy when Claimant began employment, and represented a material element with special significance to Claimant, and was relied upon by her. (*See* N.T. at 5, 8). This loss of a vested right to health insurance is a substantial change. We thus hold that, in

order to preserve this current vested right, Claimant had a necessitous and compelling reason to leave employment.

Accordingly, the order of the Board is reversed.[5]

### ORDER

NOW, August 13, 2003, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby reversed.

---

5. We recognize that this decision might require employers to expend funds in the form of UC benefits, even though a policy change is aimed at reducing costs. If economic situations necessitate the reduction or alteration of existing benefit offerings, employers may effectuate such changes, and then must provide UC benefits to employees who are forced to retire in order to maintain benefits earned, such as in the case *sub judice.* The savings from such policy changes may still outweigh the funds spent on UC benefits for affected employees. Again, we note that the Law focuses on the impact that a modification in employment has upon an employee, and not on the employer's motivation for making the modification. It is not a defense for the employer to establish that it had good reasons for making the modification. *Steinberg,* 624 A.2d at 240.