**BRUNSWICK HOTEL & CONFERENCE CENTER, LLC, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 30, 2006.

Decided Aug. 23, 2006.

Jonathan R. Hofstetter, Lancaster, for petitioner.

Teresa H. DeLeo, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

James F. Devine, Lancaster, for intervenor, Susan Rachor.

BEFORE: COLINS, President Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Brunswick Hotel & Conference Center, LLC (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) that found Susan Rachor (Claimant) to have had necessitous and compelling reasons to voluntarily quit her job with Employer pursuant to Section 402(b) of the Unemployment Compensation Law (Law)[1] because of the elimination of health care benefits previously provided to her.

The Unemployment Compensation Service Center issued a determination that Claimant had not sustained her burden of proof under Section 402(b). That section provides that, if voluntarily quitting a job, the claimant must show that such a vol-

untary termination was done for a necessitous and compelling reason. This determination was upheld by the Referee's decision on December 14, 2005, which also held that Claimant failed to meet her burden of proof under Section 402(b). Claimant then filed a timely appeal to the Board.

■ The Board issued an order, dated February 6, 2006, in which it made the following findings of fact:

1. The claimant was last employed as a full-time comptroller for three and a half years earning $45,000.00 per year with her last day of work being September 30, 2005.

2. On September 30, 2005, the Claimant severed the employment relationship due to the fact that she found the terms and conditions of employment unacceptable; lack of benefits unacceptable; the work load unmanageable; generalized stress; excessive hours and lack of competent help.

3. The employer purchased the business, in February of 2005[and] informed the claimant that it would make health insurance benefits available.

4. The claimant was assured that her employment would remain the same.

5. Previously, the bankrupt employer had provided for a total benefit package completely funded by the employer.

6. The claimant continued to ask the employer about health insurance.

7. The employer arranged for an insurance plan and the claimant did sign up to participate in this plan.

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

8. The costs of the plan were high; approximately $1,100 to $1,200 per year but the employer did not get enough participation, even though the employer offered 50% contribution, and did not ultimately provide this plan to the employees.

9. The employer agreed that it was still exploring options for health insurance.

10. The claimant voluntarily quit her employment in part because of the continued lack of health benefits.

(Bd. Findings of Fact (FOF) ¶¶ 1–10.) Based on these findings of fact, the Board concluded that Employer promised to provide health insurance for the employees, and would keep the employment the same. Because nearly eight months had passed without Employer reestablishing Claimant's insurance, the Board held that Claimant had shown a necessitous and compelling reason for quitting and, therefore, was eligible to collect unemployment benefits. Employer appeals the Board's decision, arguing that the Board erred in finding that Claimant had a necessitous and compelling reason to quit.[2]

■ Section 402(b) of the Law provides that a claimant shall be ineligible for benefits for a period "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature...." 43 P.S. § 802(b). However, a determination that a claimant voluntarily quit is not an absolute bar to the recovery of unemployment compensation benefits. *Monaco v. Unemployment Compensation Board of Review*, 523 Pa. 41, 47, 565 A.2d 127, 130 (1989). A claimant may prove necessary and compelling reasons that could excuse the voluntary action of the claimant. *Id.* An employee seeking unemployment compensation after voluntarily terminating employment has the burden of proving cause of a necessitous and compelling nature for the voluntary quit. *Fitzgerald v. Unemployment Compensation Board of Review*, 714 A.2d 1126, 1129 (Pa.Cmwlth.1998).

■ Although the Law does not define the terms "necessitous and compelling," case law has. An employee who claims to have left employment for a necessitous and compelling reason must prove that: (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve her employment. *Id.*

■ Mere dissatisfaction with one's working conditions does not constitute cause of a necessitous and compelling nature for terminating one's employment. *McKeown v. Unemployment Compensation Board of Review*, 65 Pa.Cmwlth. 617, 442 A.2d 1257, 1258 (1982). It is well-settled that an employer's imposition of a substantial unilateral change in the terms of employment constitutes a necessitous and compelling cause for an employee to terminate her employment. *A–Positive Electric v. Unemployment Compensation Board of Review*, 654 A.2d 299, 302 (Pa. Cmwlth.1995). There is no talismanic percentage for determining a change so substantial as to warrant necessitous cause for terminating employment; "rather, each case must be examined under its own attendant circumstances." *Chavez v. Unem-*

2. Our standard of review is limited to determining whether the Board's adjudication is in violation of constitutional rights, whether an error of law has been committed, or whether the factual findings are supported by substantial evidence. *Nolan v. Unemployment Compensation Board of Review*, 797 A.2d 1042, 1045 n. 4 (Pa.Cmwlth.2002).

ployment Compensation Board of Review, 738 A.2d 77, 82 (Pa.Cmwlth.1999); see also Steinberg Vision Assoc. v. Unemployment Compensation Board of Review, 154 Pa. Cmwlth. 486, 624 A.2d 237 (1993). Whether an employee has a necessitous and compelling reason to voluntarily quit employment is a question of law fully reviewable by this Court. Steinberg, 624 A.2d at 239 n. 6.

■ Employer argues, broadly, that its failure to provide health insurance does not constitute a necessitous and compelling reason for Claimant to quit. Specifically, it argues that Claimant proffered many reasons for her resignation, including that she was doing work not in her job description, doing more work due to employee personnel changes, and was promised by Employer that changes would be made which never occurred. Employer believes these reasons are merely "discontent with wages, hours, and working conditions" which do not individually constitute a necessitous and compelling reason to quit, and cannot be coupled together to form such a reason. (Employer Br. at 12). Employer relies on Hostovich v. Unemployment Compensation Board of Review, 51 Pa.Cmwlth. 344, 414 A.2d 733 (1980), where we held that a claimant's dissatisfaction with his employment, including his wages, job classification, nonexistent chance for advancement, additional job duties and a pay raise that he was promised but never received, does not give an employee a necessitous and compelling reason to quit. Additionally, Employer ar-

gues that the absence of health insurance does not constitute a necessitous and compelling reason for Claimant to quit because it made a good faith effort to provide benefits.[3]

Relying on Steinberg, Claimant and the Board argue that the elimination of health care benefits constitutes a substantial change in employment terms and, therefore, served as a necessitous and compelling reason for Claimant to resign from her employment. We agree.

In Steinberg, this Court held that an employer's unilateral alteration of an intrinsically valued benefit and the corresponding reduction in compensation could give a claimant a necessitous and compelling reason to quit his or her job. Id. at 240. The claimant in Steinberg quit her job after her employer notified her that the health insurance she previously received was going to be changed. The new insurance policy offered significantly less coverage and had a higher deductible. In order to keep her old coverage, the claimant would have had to pay $170.68 per month, which would have been subtracted from her wages. Id. Since her wages remained the same, this amounted to roughly a 14.2% loss in earned compensation. Id. This Court, in affirming the decision of the Board to grant benefits, reasoned that the employer's change in employee health benefits marked a significant change to the employment contract, as well as a significant reduction in the claimant's compensation. This Court held that there is no talismanic percentage that determines

---

**3.** Although not specifically set out in the Statement of Questions, in its Summary of Argument and in the discussion section of its brief, Employer argues that the Board should not have made a credibility finding concerning the testimony presented. Employer fails to provide any authority to support this argument. It is beyond purview that the Board is the ultimate fact-finder and is empowered to

make credibility determinations. McCarthy v. Unemployment Compensation Board of Review, 829 A.2d 1266, 1269–1270 (Pa.Cmwlth. 2003). Additionally, when making those determinations, the Board may accept or reject the testimony of any witness in whole or in part. Id. at 1270. We, therefore, reject this argument.

when a unilateral change in the terms and conditions of employment is substantial, but that each case turns on its own facts. *Id.* at 239. This Court stated that the 14.2% reduction was right on the cusp of what should qualify as substantial. *Id.* The Court also noted that this impact would likely increase in the future based on the steady increase in insurance policy premiums over the course of the claimant's employment. Based on the facts of the case, this Court decided that the reduction in earned compensation was enough to provide the claimant a necessitous and compelling reason to quit under Section 402(b) of the Law.

Similarly, in *Chavez*, during the course of negotiations for a new contract the employer made unilateral changes to the employee health plan, including higher deductibles, the elimination of one of the choices for health insurance, and the complete elimination of coverage for routine examinations and immunizations. This Court found that the employer "unilaterally imposed a substantial change in the terms and conditions of the [p]etitioners' employment," which constituted a necessitous and compelling reason to quit, and reversed the order of the Board which had denied benefits. *Id.* at 82. Focusing upon the impact that the modifications had on the employees, this Court held that since there was no talismanic percentage for determining when a change is substantial,

the claimants did not have to offer specific testimony concerning the exact reduction in compensation. *Id.*

We find the case at bar similar to *Steinberg* and *Chavez*. As in those cases, Claimant's loss of health benefits was a significant change in the terms of her employment. Unlike in *Steinberg*, where the claimant could have purchased health insurance coverage at an additional cost, in this case there was no option for Claimant to purchase health insurance. If a substantial increase in the cost for health insurance can be a sufficient unilateral change in the terms and conditions of employment so as to be a necessitous and compelling reason to quit, so can the total elimination of health insurance previously provided.[4]

The Claimant must also demonstrate that she made a reasonable effort to preserve her employment. *Fitzgerald*, 714 A.2d at 1129. Here, she worked for eight months without health insurance. Although Employer did attempt to get insurance, it should be noted that, as of the hearing before the Referee held in mid-December, Employer still had not been able to provide health insurance to its employees. We believe Claimant reasonably tried to preserve her employment relationship. We, thus, agree that Claimant had a necessitous and compelling reason to quit her job.[5]

---

**4.** The only facts that were given in the instant case were the proposed costs of the group plan that Claimant had signed up for, but had fallen through due to the lack of employee participation.

**5.** In addition to relying on *Steinberg Vision Associates v. Unemployment Compensation Board of Review*, 154 Pa.Cmwlth. 486, 624 A.2d 237, 239 (1993), the Claimant cited to *Johnson v. Unemployment Compensation Board of Review*, 723 A.2d 730 (Pa.Cmwlth. 1998) and *Pacini v. Unemployment Compensation Board of Review*, 102 Pa.Cmwlth. 355,

518 A.2d 606 (1986), in support of her position. In both of those cases the claimants were bargaining unit members who, during work stoppages, elected to voluntarily retire to protect their retirement benefits, such as health insurance, rather than possibly lose the benefits under new bargaining agreements. In both cases the claimants were receiving unemployment benefits prior to their decision to retire, and hoped to continue to receive the benefits after their retirement, until the work stoppage ended and a new agreement reached. The claimants maintained that they

As we find *Steinberg* applicable here, we find Employer's reliance on *Hostovich* misplaced. While we agree with Employer that mere discontent with wages, hours and working conditions is not adequate to cause a necessitous and compelling reason for an employee to quit, and that Claimant gave reasons other than the loss of health insurance for her quit, unlike in *Hostovich*, Claimant also gave as a reason her loss of health insurance.

Employer analogizes the employer's promise of a pay raise in *Hostovich* to Employer's promises here to provide health insurance benefits and argues that failure to provide promised benefits, even when coupled with other reasons, does not constitute a cause of necessitous and compelling nature. However, this analogy does not apply here because, prior to Employer's promises to provide health insurance, the Claimant *already received* health insurance, which was terminated. Therefore, Employer was not merely promising a future employment benefit, as in *Hostovich*, but was promising to restore a benefit that had been previously, unilaterally terminated. Thus, it is the unilateral termination of health insurance, not Employer's promise to restore the benefits, which constitutes the substantial change in the terms and conditions of Claimant's employment. While we appreciate Employer's argument that it has made efforts to provide the insurance, the inquiry must be focused on the impact that Employer's changes have upon Claimant, not Employer's reasons for instituting the changes. *Steinberg.* 829 A.2d at 239–240.

Accordingly, the order of the Board is affirmed.

## *ORDER*

**NOW,** August 23, 2006, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.

---

had a compelling and necessitous reason to retire because they faced the potential of losing valuable health insurance and other benefits if they did not.

In both cases, this Court held that the potential to lose these benefits did not create a necessitous and compelling reason to retire and still receive unemployment compensation. The Claimant argues that if the potential loss of benefits does not create a necessitous and compelling reason, then, the actual loss of these benefits should. These opinions only discuss the **potential** loss of benefits, and do not assist in resolving this case.