The **PHILADELPHIA HOUSING AUTHORITY**, Petitioner

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW**,
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 8, 2011.

Decided Aug. 31, 2011.

Mary T. Metzler, Philadelphia, for petitioner.

Paul R. Jordan, Assistant Counsel, Harrisburg, for respondent.

Ralph J. Teti, Philadelphia, for intervenor James T. DiGiacomo.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

The Philadelphia Housing Authority (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) finding James T. DiGiacomo (Claimant) eligible for unemployment compensation (UC) benefits pursuant to Section 402(b) of the Unemployment Compensation Law[1] (Law). The Board granted UC benefits on the basis that a substantial reduction would have occurred to Claimant's pension benefits had he not voluntarily resigned. Because we conclude that the projections about Claimant's future pension benefits were speculative, we reverse.

The UC Service Center (Service Center) issued a determination that Claimant was ineligible for benefits under Section 402(b) because he did not show that he had a necessitous and compelling reason to resign. Claimant timely appealed to the UC Referee (Referee), who reversed the decision of the Service Center and found Claimant eligible for benefits. The Referee found that Claimant, who had the requisite years of service with Employer to receive retirement benefits, would have faced a substantial reduction in those benefits when the collective bargaining agreement expired and "there was no indication that another collective bargaining agreement was imminent." (Referee's Decision/Order at 2.) Employer then appealed to the Board.

The Board issued an order, dated April 12, 2010, in which it affirmed the Referee and adopted the Referee's findings of fact as follows:

1. The claimant was last employed by the Philadelphia Housing Authority as a Utility Equipment Supervisor from June 24, 1977, and his last day of work was October 29, 2009. His final rate of pay was $28.53 an hour.

2. Employees who have thirty years of service, regardless of their age, are entitled to full retirement benefits from the employer.

3. The claimant had over thirty years of service with the above employer and was entitled to full retirement benefits from the employer.

4. The claimant was a member of a union [Union] which had a collective bargaining agreement [ (CBA) ] with the employer, which expired effective March 31, 2008.

5. The claimant was subsequently covered by a side letter to the [CBA], which indicated if an employee retired prior to November 1, 2009, the employee[']s monthly retirement benefit calculation would be based upon the claimant's average monthly earnings using the rate of pay in effect on November 1, 2008, 2007, and 2006.

6. Once the side letter to the latest [CBA] ended, the calculation of the claimant's monthly retirement benefits would be based upon the claimant's average monthly earnings using the rate of pay in effect on November 1, 2002, 2001 and 2000, which would significantly reduce the claimant's monthly retirement benefits in the amount of approximately $594.20 per month.

7. Although the claimant's union and the employer have continued to negotiations [sic] on a new [CBA], the two sides have been unable to reach

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

a [CBA] as of the claimant's last day of work of October 29, 2009.

8. Effective October 29, 2009, the claimant voluntarily retired from his employment because his monthly retirement benefits would be significantly reduced if he retired from employment beyond November 1, 2009, and it would take him at least three to five years to recoup [the] retirement benefits he would have lost had he retired beyond November 1, 2009.

9. At the time the claimant retired, there was no indication that a new [CBA] was imminent which would reinstate the formula for the calculation of the claimant's retirement benefits so that there would be no significant reduction regarding the claimant's retirement benefits.

(Findings of Fact (FOF) ¶¶ 1–9.) The Board concluded that Claimant had a necessitous and compelling reason to terminate his employment because he "would have lost a vested right to almost $600.00 in monthly retirement benefits if he had remained employed after October 31, 2009." (Board's Decision/Order at 1.) The Board determined that Claimant's decision was not based upon speculation and, therefore, *Petrill v. Unemployment Compensation Board of Review*, 883 A.2d 714 (Pa. Cmwlth.2005) was not controlling. Rather, relying upon *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657 (Pa.Cmwlth.2006) and *McCarthy v. Unemployment Compensation Board of Review*, 829 A.2d 1266 (Pa.Cmwlth.2003), the Board determined that Claimant had a necessitous and compelling reason to re-

sign under Section 402(b). Employer now petitions for review of the Board's Order.

■ The issue before this Court is whether the Board erred in concluding that Claimant had a necessitous and compelling reason to resign when he voluntarily terminated his employment.[2]

■ Section 402(b) of the Law provides that a claimant shall be ineligible for benefits for a period "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b). It is well settled that an employee who claims to have left work for a necessitous and compelling reason must prove that: (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve his employment. *Brunswick Hotel*, 906 A.2d at 660. The circumstances producing pressure to leave must be *both* real and substantial. *PECO Energy Company v. Unemployment Compensation Board of Review*, 682 A.2d 49, 51 n. 1 (Pa.Cmwlth. 1996) (quoting *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 358–59, 378 A.2d 829, 832–33 (1977)), *petition for allowance of appeal denied*, 547 Pa. 739, 690 A.2d 238 (1997). An employer's unilateral imposition of a real and substantial change in the terms and conditions of employment provides a necessitous and compelling reason for an employee to leave work. *McCarthy*, 829 A.2d at 1270. Whether an employee has a necessitous and compelling reason to voluntarily quit employment is a question of law

2. Our review is limited to determining whether the Board's decision is in violation of constitutional rights, whether an error of law has been committed, or whether the factual findings are supported by substantial evidence. *Nolan v. Unemployment Compensation Board of Review*, 797 A.2d 1042, 1045 n. 4 (Pa. Cmwlth.2002).

fully reviewable by this Court. *Pacini v. Unemployment Compensation Board of Review,* 102 Pa.Cmwlth. 355, 518 A.2d 606, 607 (1986). The claimant who voluntarily terminates his employment has the burden of proving that a necessitous and compelling cause existed. *Petrill,* 883 A.2d at 716.

Employer contends that the Board erred when it concluded that *Brunswick Hotel* and *McCarthy* control this case, but *Petrill* does not. Employer points out that *Petrill,* like the instant case, involved a union employee who voluntarily left employment because he speculated that his benefits might be reduced during negotiations over a new CBA. In *Petrill,* the union and employer had not been able to reach an agreement on a new CBA as of the claimant's last day of work and, therefore, we concluded that the employee's decision to leave his employment was based on changes that were merely speculative. *Petrill,* 883 A.2d at 717. In sum, Employer argues that voluntarily terminating one's employment during ongoing negotiations regarding a new CBA does not constitute the requisite necessitous and compelling cause pursuant to Section 402(b) of the Law.

In *Brunswick Hotel,* the employer purchased the business that had provided for a total benefit package completely funded by the employer, including health insurance benefits, from a bankrupt employer. *Brunswick Hotel,* 906 A.2d at 659. The new employer had informed the claimant that it would make health insurance available and assured her that it would remain the same. *Id.* The employer had arranged for a plan and claimant had signed up to participate in it, but the employer ultimately did not provide this or any other plan to its employees. *Id.* at 659–60. After waiting nearly eight months during which employer failed to reestablish claimant's insurance, leaving the claimant without *any* health insurance benefits when she previously had one hundred percent coverage, *id.,* the claimant terminated her employment. This Court concluded that, under these circumstances, the employer's unilateral termination of health insurance constituted a substantial change in the terms and conditions of the claimant's employment. *Id.* at 662.

In *McCarthy,* the claimant's employer had a policy that provided health insurance benefits during employees' retirement if they had worked for the employer for fifteen years and had reached the age of fifty-five. *McCarthy,* 829 A.2d at 1269. Because of rising costs, the employer changed this policy to require all employees to reach the age of sixty-five in order to receive the health benefits upon retirement. *Id.* However, after changing its policy, the employer provided those employees who had both reached the age of fifty-five and had fifteen years of service the option to retire and still retain their former eligibility for health insurance coverage during retirement. *Id.* If an eligible employee did not retire by a date within approximately two months of the policy change, then that employee would have to work until age sixty-five to become eligible for the retirement health coverage. *Id.* The claimant was sixty years of age with eighteen years of work credit at the time the employer changed the retirement health benefits policy. The claimant, therefore, opted to retire to retain her eligibility for health insurance coverage. The issue in *McCarthy* was whether the change in retirement health benefits was a substantial change. This Court concluded that the total loss of claimant's already vested right to health insurance in retirement was a substantial change that represented a material element with special significance to the claimant and that claimant's desire to pre-

serve such a vested right gave her a necessitous and compelling reason to leave her employment. *Id.* at 1272–73.

In both *Brunswick Hotel* and *McCarthy*, the issue before the Court was whether the unilateral change by the employer was *substantial.* There was no issue as to whether the changes, which had occurred, were speculative. Moreover, neither of these cases involved ongoing negotiations for a new CBA; thus, these cases are not similar to the issues presented in this case.

We agree with Employer that this case is more analogous to *Petrill.* In *Petrill,* the claimant voluntarily retired based on the belief that he would lose a portion of his health benefits due to ongoing collective bargaining negotiations between his union and his employer when no agreement had been reached on a successor CBA as of the date of the hearing. *Petrill,* 883 A.2d at 715–16. This Court concluded that the claimant was not eligible for UC benefits because his decision to retire was based on speculation about the potential curtailment of his medical benefits. *Id.* at 717.

> While we sympathize with [the claimant's] feelings of uncertainty, and the predicament that he believed himself to be in, the fact is that he chose to retire based on speculation rather than on what he actually knew to be true.... The fact that, here, [the claimant], who was represented by a union, chose to retire when he faced merely a *proposal* to erode his health benefit takes this case out of the realm of our decision in *McCarthy* [ ], where the claimant was *in fact* faced with the decision to retire in

order to avoid a substantial, unilateral change in an earned health benefit.... Essentially, the law is that mere speculation about one's future job circumstances, and attendant benefits, without more, does not render a decision to voluntarily terminate employment necessitous and compelling.

*Id.* (emphasis in the original). *Petrill,* thus, underscores the principle that "mere speculation about one's future job circumstances" and the potential for changes to employee benefits *during negotiations* for a new CBA does not render a decision to voluntarily terminate employment necessitous and compelling because the terms of the CBA remain speculative while it is being negotiated. *Id.*

Here, the evidence shows that the circumstances that caused Claimant to voluntarily quit were similar to those in *Petrill* because when Claimant voluntarily terminated his employment in October 2009, the former CBA had expired, negotiations on a new CBA *were ongoing,* but Union and Employer had not yet negotiated a new CBA. (FOF ¶ 7.) Claimant admitted that the negotiations included *possible* changes to the pension benefit program. (Hr'g Tr. at 12, R.R. at 33a.) Claimant retired from his employment because he *believed* that, if he did not retire on that date, he would lose substantial pension benefits. (FOF ¶ 9.) However, as in *Petrill,* Claimant could only speculate about what his future pension income might be under a future CBA because the negotiations on that CBA were still ongoing.[3] Any potential reductions to his future pension income were only proposals, but would not be known with certainty until a new CBA had been

---

**3.** Claimant was included among certain employees in a side letter that provided a special extension of a pension "roll up" provision after the provision had expired. (Hr'g Tr. at 15–17, R.R. at 36a–38a.) This side letter expired as of November 1, 2009, (FOF ¶ 5), but

the new CBA was still being negotiated on that date and, therefore, the new CBA's terms remained speculative as of October 29, 2009, the date of Claimant's voluntary retirement. (FOF ¶ 7.)

agreed upon. In addition, Claimant admitted the possibility that he may not lose any pension income if he continued to work for at least three to five more years and that he did not know what his retirement benefits would have been had he worked until age sixty-five. (Hr'g Tr. at 13, R.R. at 34a.) Pamela Gibson, Employer's Employment Administrator, testified that "[t]here are provisions in the pension plan that allow people to leave at age 45, at age 55, at age 62, or with 25 years of service or 30 years of service," acknowledging that those are "*optional* times that they can leave and still receive a pension [but that] the pension" was based on age 65 and "[t]he normal retirement as stated in the pension plan is age 65." (Hr'g Tr. at 19–20, R.R. at 40a–41a (emphasis added).) Ms. Gibson further explained that the formula for the pension includes credited service and, thus, when an employee continues to work, the formula takes the credited service into account. (Hr'g Tr. at 20, R.R. at 41a.) She noted that the pension "continues to add and build equity in the benefits" and "[if] he stayed ... it would change the factors." (Hr'g Tr. at 21, R.R. at 42a.)

Our Court's recent decision in *Oliver v. Unemployment Compensation Board of Review*, 29 A.3d 95, No. 1655 C.D.2010, 2011 WL 3586235 (Pa.Cmwlth. August 17, 2011), which relies on *Petrill*, is squarely on point. Both *Oliver* and the case at bar involve the same employer, employer's witnesses, union, expired CBA, side letter, and ongoing negotiations for a new CBA.[4] *Oliver* similarly involved an employee who decided to retire in order to take advantage of what he perceived to be favorable pension terms at that time, speculating that the terms may not again be as favorable for some time.[5] *Oliver*, 29 A.3d at 96–97, 2011 WL 3586235 at *1. As in the instant case, negotiations for the new CBA were still ongoing at the time of leaving his employment. *Id.* at 96–97, 2011 WL 3586235, at *1. In *Oliver*, this Court concluded, based on *Petrill*, that where a CBA has expired and the parties are in the midst of negotiations, not yet having reached an agreement on a successor CBA, the terms of the future CBA remain speculative.

In the present case, as in *Petrill* and *Oliver*, Claimant could only speculate about whether his pension benefits would be reduced, maintained, or increased by any eventual CBA. When Claimant left his employment, he, like the claimant in *Oliver*, decided to take advantage of what he believed to be favorable pension terms at that time, speculating that the terms may not be as favorable for three to five years. (FOF ¶ 8.) Claimant retired due to speculation about proposed changes to his pension benefits that were being negotiated. However, any proposed changes were "not final decisions, but proposals." *Oliver*, 29 A.3d at 98, 2011 WL 3586235 at *3 (citing *Duquesne Light Company v. Unemployment Compensation Board of Review*, 62 Pa.Cmwlth. 253, 436 A.2d 257, 259 (1981)).

4. In both *Oliver* and the case at bar, The Philadelphia Housing Authority is the employer; Ms. Gibson, Employment Administrator, and Dennis Kaminski, Employer's Tax Consultant Representative, appeared to testify for Employer; and the Union is AFSCME Local 2186. (Hr'g Tr. at 1, R.R. at 22a.)

5. The pension formula varied with age and years of credited service, with sixty-five years of age being considered the normal retirement age. (Hr'g Tr. at 19, R.R. at 40a.) Both claimants were entitled to benefits on the date of their retirement. The claimant in *Oliver* had worked for more than twenty-nine years and was forty-seven years of age, *Oliver*, 29 A.3d at 96–97, 2011 WL 3586235 at *1. Claimant herein had worked for thirty-two years, (FOF ¶ 1), and was fifty-five years of age. (Hr'g Tr. at 18, R.R. at 39a.)

Although Claimant was apprehensive of the proposals, "we cannot conclude as a matter of law that those circumstances constituted cause of a necessitous and compelling nature justifying the claimant's retirement." *Duquesne Light*, 436 A.2d at 259 (concluding that claimant's voluntary retirement on the basis that, under his existing labor contract, his fringe benefits would have been frozen if he worked past the age of sixty-five, was not a necessitous and compelling cause to voluntarily terminate his employment where there were ongoing discussions about this between the employer and the union and, therefore, there were no final decisions, but only proposals). On the date Claimant voluntarily retired, he may have received "as much [ ] as he could have ever expected" from his pension as a fifty-five year old, *id.* (quoting *Unemployment Compensation Board of Review v. Holohan*, 20 Pa. Cmwlth. 381, 341 A.2d 587, 588 (1975)), and could only speculate about what his pension benefits would have been at any given time in the future pending the ultimate outcome of the new CBA still being negotiated. *Id.* Here, because Claimant's decision to retire was based upon speculation about the terms of a future CBA and how those might affect his pension benefits, Claimant's decision to voluntarily retire at a point in time when he perceived his pension terms to be most favorable for him did not provide him with a necessitous and compelling reason to quit under Section 402(b) of the Law.

Accordingly, the order of the Board is reversed.

Judge BUTLER dissents.

### ORDER

**NOW**, August 31, 2011, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby **REVERSED**.