IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Yost,                                          :
                              Petitioner            :
                                                    :
              v.                                    :
                                                    :
Unemployment Compensation                           :
Board of Review,                                    :   No. 290 C.D. 2022
                              Respondent            :   Submitted: February 4, 2025

BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                                    FILED: March 7, 2025


              John Yost (Yost) petitions for review *pro se* from the January 26, 2022,
order of the Unemployment Compensation Board of Review (Board), which
affirmed the referee's determination that Yost was ineligible for unemployment
compensation (UC) benefits because he failed to make a reasonable effort to
preserve his relationship with C & Z Construction (Employer) after advising them
in February 2021 that he would miss work due to an illness.  Upon review, we affirm.


                    **I.  Factual & Procedural Background**

              Yost first applied for UC benefits in March 2020 after working for Hit
Man Construction.  Certified Record (C.R.) at 5-6.[1]  According to the administrative
docket, he received UC benefits regularly through late July 2020.  *Id*. at 3-4.  He
then began working for Employer and did not receive benefits between August 2020

---

[1] Certified record references reflect electronic pagination.

and early February 2021. *Id.* at 3. He filed a new claim on February 15, 2021, asserting that he had to leave work for Employer due to COVID-19 symptoms. *Id.* at 3 & 8. He was initially found eligible for benefits in a May 10, 2021, determination by the UC Service Center. *Id.* at 8. Employer appealed, asserting that Yost failed to provide any proof of his reported illness, "voluntarily chose not to return to work" when offered the opportunity, and had returned his company phone and vehicle. *Id.* at 19.

At the July 21, 2021, telephonic hearing, Employer failed to answer the referee's call, after which the referee proceeded without Employer's participation. C.R. at 38. Yost testified that he worked for Employer as a carpenter beginning in August 2020. *Id.* at 41. He earned $20 per hour and worked full time, including weekends and "as many hours as I wanted." *Id.* After he worked on February 12, 2021, which he believed was a Thursday, he got very sick with sneezing and a runny nose. When he called Employer's project manager, Jeremy, that evening and told him, Jeremy "kind of hung up on" him. *Id.* Yost went in on Friday, then was sick all weekend in bed with congestion and fever. *Id.* at 42.

Jeremy called that Sunday to tell him to come to work on Monday, but he declined because he still did not feel better. C.R. at 42. He stated that on Monday, Employer "demanded" that he get tested for COVID-19 but did not offer to pay for the test. *Id.* He did not feel well enough to go out and get tested. *Id.* at 43. He testified that he had a company truck and phone at the time, but did not explain what happened to them. *Id.*

Yost stated that "three or four weeks later," he called Jeremy and "another guy" about three times, but they never picked up and the calls went to voicemail. C.R. at 43-44. He denied that he quit working for Employer. *Id.* at 43.

2

He stated that his illness lasted about two to three months and set him back financially; he fell behind on his credit cards and after he felt better, he had some work opportunities but could not afford the transportation to get from his home in Carlisle to those jobs, which were in Lancaster. *Id*. at 45. Yost averred that Employer's personnel should have called him back and let him return to work because he had worked weekends before his illness and companies should want to keep those kinds of workers. *Id*. at 46.

Yost acknowledged that he never went to see a doctor because he was so ill and "just had no motivation whatsoever." C.R. at 43-44. He talked to some people who work in the "medical field" who told him to just "hang loose" and that he did not need to seek medical care unless he had breathing problems, which was not the case. *Id*. at 47. He did not know whether he had COVID-19 but recalled that the most serious part of his illness, when he was "down" with fever and congestion and unable to work, lasted 3-4 weeks; he did not begin to feel better until after 5-6 weeks. *Id*. at 44-45 & 47. Employer never called to ask how he was doing or when he could return to work. *Id*. at 45. As of the July 2021 hearing, he was working with another company. *Id*.

On August 17, 2021, the referee issued a decision and order reversing the UC service center's determination that Yost was eligible for benefits. C.R. at 51-54. The referee found as facts that Yost worked for Employer as a full-time carpenter at $20 per hour for 2 months (subsequently corrected by the Board to 6 months in accordance with Yost's testimony); that his last day of work was on or about February 12, 2021; that he contacted Employer initially and reported that he was ill and unable to work; that he experienced fever, coughing, and sneezing but did not seek medical treatment or testing for COVID-19; that he did not feel better

until 3-5 weeks later; that he ultimately returned Employer's phone and vehicle; and that work was available for him during the relevant time. *Id*. at 52.

According to the referee, an employer has a reasonable expectation that an employee who misses time for an illness will keep the employer apprised of his condition and when he might be able to return to work. C.R. at 52. The referee stated that Yost admittedly failed to seek medical treatment or tell Employer when he might be able to return to work. *Id.* Accordingly, the referee concluded that Yost had not taken the appropriate steps to address or document his illness or to preserve his relationship with Employer. *Id.* As such, Yost was ineligible for UC benefits under Section 402(b) of the Unemployment Compensation Law (UC Law),[2] 43 P.S. § 802(b), which requires an employee who voluntarily leaves work to show "cause of a necessitous and compelling nature." *Id*.

Yost appealed the referee's decision and order to the Board, which did not hold any additional hearings and issued a record-based decision and order on January 26, 2022. C.R. at 61 & 69-70. The Board adopted the referee's findings of fact (except for correcting the duration of his employment with Employer from two months to six months) and agreed with the referee that the UC Law requires a claimant to show that he or she has "acted with ordinary common sense and made a reasonable effort to preserve his employment" during an absence from work. *Id*. at 70. The Board concluded that Yost's failure to contact Employer for 3-4 weeks after first notifying it of his illness did not meet that burden. *Id*. Although Yost did not expressly quit his job, the Board stated that "Pennsylvania courts have long held that leaving work for an extended period of time without contacting the employer is tantamount to quitting." *Id*. Accordingly, Yost was ineligible for UC benefits

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

pursuant to Section 402(b) of the UC Law. *Id.* Yost sought further review in this Court.

## II. Issue & Parties' Arguments

The sole issue before this Court is whether Yost showed that he attempted to preserve his relationship with Employer so as to be eligible for UC benefits. Yost maintains that his illness, which he believes was COVID-19, "physically incapacitated" him to the extent that he was unable to work but also kept him from "reaching out during the feverish period." Yost's Br. at 7. He maintains that calling Employer once he felt well enough to work was sufficient and that Employer's personnel wrongly "disregarded" his attempts to contact them. *Id.* at 9. Board Counsel responds that although Yost notified Employer on or about February 14, 2021, that he was ill and unable to work, his failure to get a COVID-19 test or inform Employer of his condition for approximately one month amounted to a "voluntary quit" that negated his employment relationship and eligibility for UC benefits. Board's Br. at 5-8.

## III. Discussion

In UC matters, the Board is the ultimate factfinder and is empowered to make its own determinations as to evidentiary weight.[3] *Constantini v.*

---

[3] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. 2 Pa. C.S. § 704; *Johns v. Unemployment Comp. Bd. of Rev.,* 87 A.3d 1006 (Pa. Cmwlth. 2014). When a claimant fails to challenge any specific findings of fact made by the Board, those findings are conclusive on appeal. *Campbell v. Unemployment Comp. Bd. of Rev.,* 694 A.2d 1167, 1169 (Pa. Cmwlth. 1997). Yost disagrees with the Board's conclusion that he failed to preserve his employment relationship but does not challenge the Board's findings of fact, which are, accordingly, conclusive on appeal.

*Unemployment Comp. Bd. of Rev.*, 173 A.3d 838, 843 (Pa. Cmwlth. 2017). "[T]his Court is bound to examine the [evidence] in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn" therefrom. *U.S. Banknote Co. v. Unemployment Comp. Bd. of Rev.*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (additional quotation marks omitted). That there may be record evidence "that could support a contrary conclusion" does not mean "that the findings of fact are not supported by substantial evidence." *Constantini*, 173 A.3d at 842-43. However, even if "[t]he Board's findings of fact are conclusive upon appeal[,] . . . the legal conclusions drawn by the Board from its findings of fact remain subject to judicial review." *McCarthy v. Unemployment Comp. Bd. of Rev.*, 829 A.2d 1266, 1270 (Pa. Cmwlth. 2003).

Section 402(b) of the UC Law states that a claimant "shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b). "Although sickness may be good cause for leaving work, continued absence from work may, through the lapse of an unreasonably long period of time, become a voluntary termination of the employer-employee relationship without good cause[.]" *Simpson v. Unemployment Comp. Bd. of Rev.*, 370 A.2d 432, 434 (Pa. Cmwlth. 1977). The burden is on the employee "to manifest to his employer his intention not to abandon his employment and to keep alive the employer-employee relationship after the expiration of a reasonable time for a temporary absence." *Id.* "The test of a reasonable length of time, however, must be measured by all the circumstances known by both the employer and [claimant]." *McCarty v. Unemployment Comp. Bd. of Rev.*, 380 A.2d 1331, 1333 (Pa. Cmwlth. 1978). The

6

claimant must "take the necessary minimal steps to preserve the employment relationship" by maintaining reasonable contact with the employer and keeping the employer informed as to when the claimant expects to return to work. *Unemployment Comp. Bd. of Rev. v. Metzger*, 368 A.2d 1384, 1386 (Pa. Cmwlth. 1977).

In *Simpson*, the claimant was injured at work in February 1973; she treated with company doctors and was released to sedentary work in May 1973. 370 A.2d at 434. She worked one day, felt she was not recovered enough to continue working, and did not go back the next day or contact her employer. *Id*. Instead, she treated with a non-company doctor who did not release her to work until September 1973. *Id*. When she contacted her employer to return to work, she was told that she had been replaced. *Id*. She applied for UC benefits and was denied by the UC Service Center, a referee, and the Board. *Id*. The claimant testified that she had been in contact with a work foreman between May and September 1973, but the Board did not credit that testimony. *Id*. at 435. This Court affirmed, stating that the Board's credibility determination was not subject to review and that its decision was supported by the record. *Id*. at 435; *see also Benitez v. Unemployment Comp. Bd. of Rev.*, 458 A.2d 619, 620 (Pa. Cmwlth. 1983) (holding that claimant out of work with an excused physical condition failed to preserve the employment relationship when he did not communicate with the employer for five months).

By contrast, in *Novotny v. Unemployment Compensation Board of Review*, 469 A.2d 718 (Pa. Cmwlth. 1984), the claimant advised her employer in December 1981 that she would be unable to work for an unspecified period of time due to health issues. *Id*. at 718. Thereafter, the claimant and her parents kept in contact with the employer, which the employer acknowledged on the record. *Id*. at

7

719. In February 1982, the claimant advised the employer that she was able to resume work, but the employer advised her that her position had been filled. *Id.* The UC Service Center, referee, and Board denied her claim. *Id.* This Court reversed, stating that "contact with the employer was maintained and the employer was kept informed of the state of [Novotny's] health" and that, based on the overall record, the claimant had preserved her work relationship with the employer. *Id.* at 720.

Here, Yost does not dispute the Board's findings of fact but challenges its conclusion that he did not preserve his work relationship with Employer, which is reviewable on appeal. *McCarthy*, 829 A.2d at 1270. The record, which is comprised of Yost's filings and testimony, reflects that he did inform Employer on or about February 14, 2021, that he was ill and unable to work. C.R. at 42. Employer asked him to get tested for COVID-19 but he did not feel well enough to go out for testing. *Id.* at 43. He did not seek medical care because people who work "in the medical field" told him to "hang loose" unless he had breathing problems, which was not the case. *Id.* at 47. He admittedly did not contact Employer again until 3-4 weeks later when he felt well enough to return to work. *Id.* at 43-44. He denied quitting but did not expressly challenge Employer's assertion in its appeal that he returned his company phone and vehicle at some point. *Id.*

In *Simpson*, *Benitez*, and *Novotny*, the claimants' absences for illness were initially excused, which appears to have been the case here. However, the claimant in *Novotny* kept in regular contact with the employer during the time of her illness, which this Court found relevant to reversing the administrative determinations that she was not eligible for benefits. Yost, by contrast, admitted that he did not contact Employer at all during the 3-4 weeks when he was out of work. He avers that this was due to the severity of his illness, but he also admitted that he

did not get tested for COVID-19 or seek medical care, actions that may have enabled him to document and support his position that his absence was due to "cause of a necessitous and compelling nature" as required by Section 402(b) of the UC Law. Similarly, in *Simpson* and *Benitez*, the claimants both failed to either notify or present medical information to their employers for an extended period of time after their initially excused absences. They were found to have abandoned their employment relationships and were deemed ineligible for benefits.

In his testimony, Yost denied quitting, but regardless of how he may have subjectively felt, his actions during his absence did not "manifest an intention" to Employer that he expected to return by taking the "necessary minimal steps" of maintaining reasonable contact with Employer and keeping it informed. *See Simpson*, 370 A.2d at 434; *Metzger*, 368 A.2d at 1386. Even though 3-4 weeks, the length of Yost's absence, is shorter than the months in *Simpson* and *Benitez* during which those claimants failed to maintain contact with their employers, Yost makes no argument that in the construction and carpentry business, a full-time worker can reasonably expect to still have a job after nearly a month of silence, even if the absence was initially excused for illness.

Lastly, Yost testified that Employer should have taken the initiative to stay in touch or returned his calls after he felt better 3-4 weeks after he went out of work. However, Yost bore the burden to show his intention to preserve the work relationship; it was not Employer's responsibility to affirmatively reach out to Yost. *See McCarty*, 380 A.2d at 1333. As such, the Board's determination that Yost was not eligible for benefits was supported by substantial record evidence and did not amount to an error of law. Therefore, Yost's claims in this appeal are meritless.

9

### IV. Conclusion

In light of the foregoing, the Board's January 26, 2022, order affirming the referee's determination that Yost was ineligible for benefits is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Yost, : 
               Petitioner : 
  : 
     v. : 
  : 
Unemployment Compensation : 
Board of Review, :    No. 290 C.D. 2022
               Respondent : 

## **O R D E R**

AND NOW, this 7th day of March, 2025, the January 26, 2022, order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge