# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Intermediate Unit 1,          :
            Petitioner    :
                      :
         v.           :   No. 161 C.D. 2015
                      :   Submitted: September 4, 2015
Unemployment Compensation  :
Board of Review,         :
            Respondent  :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**               **FILED: January 6, 2016**

Petitioner Intermediate Unit 1 (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed an Unemployment Compensation Referee's (Referee) decision finding RoseMarie Cosgray (Claimant) eligible for unemployment compensation benefits because Claimant had a necessitous and compelling reason to leave her employment. We now affirm.

Claimant was employed by Employer as a part-time warehouse foreperson. (Reproduced Record (R.R.) at 11a.) Claimant resigned from her position on September 4, 2014. (*Id.* at 12a, 42a.) Claimant filed for unemployment compensation benefits on September 9, 2014, explaining that she had resigned from her position due to "transportation problems." (*Id.* at 42a-43a.) The Erie UC Service Center (Service Center) issued a determination finding

Claimant eligible for unemployment compensation benefits, because it determined that Claimant had a necessitous and compelling reason for leaving her employment. (*Id.* at 1a-2a.) Employer appealed the Service Center's determination, and a Referee conducted an evidentiary hearing.

During the hearing before the Referee, Claimant testified that she began working as a part-time warehouse foreperson for Employer's Science Matters program in 2007. (*Id.* at 11a-12a.) In August 2014, Employer relocated Claimant's place of employment from Washington, Pennsylvania, to Grindstone, Pennsylvania, which Claimant felt was "too far of a distance with travel as well as costs for a part-time job." (*Id.* at 12a.) As a result of the relocation, Claimant's commute increased from twelve miles to thirty-three miles one way. (*Id.* at 26a.) Claimant testified that she proposed several solutions to resolve the transportation problems, including transferring to a new position closer to her home, working longer days to decrease the number of days she would be required to come to work, and receiving compensation from Employer to offset her travel costs. (*Id.* at 15a.) Claimant also investigated the option of using public transportation, but she discovered that public transportation to Employer's Grindstone location was not available. (*Id.*)

Employer presented the testimony of Donald Martin, Employer's Assistant Executive Director. Mr. Martin testified that Employer is a service provider that operates as an intermediary between the Pennsylvania Department of Education and local school districts. (*Id.* at 16a-17a.) Employer serves three counties: Washington County, Greene County, and Fayette County. (*Id.*) Mr. Martin explained that the Science Matters program was relocated to Grindstone so as to add two additional classrooms in Washington for Employer's Therapeutic

2

Emotional Support Program. (*Id.* at 18a.) The Science Matters program was moved to the Colonial School, which provides both alternative and special education programs to students. (*Id.* at 18a-19a.) Mr. Martin explained that the Science Matters program was moved to the Colonial School, because it was "a more central location to service 25 [d]istricts in a three county area." (*Id.* at 20a.) Mr. Martin met with Claimant after Employer informed Claimant that the Science Matters program was to be relocated. (*Id.* at 19a.) During the meeting, Claimant purportedly told Mr. Martin that "she did not want to go into that building with delinquent children there." (*Id.*) Mr. Martin testified that other positions "came available" in Washington, but none of these positions were discussed with Claimant. (*Id.* at 27a.)

Employer also presented the testimony of Jennifer Judge, Employer's Director of Human Services. Ms. Judge testified that Employer was unable to accommodate Claimant's request for a longer work day, because "[u]nder [Employer's] structure with [Employer's] compensation with [Employer's] policy, a full[-]time day is consider[ed] an eight hour day." (*Id.* at 22a.) Employer was unable to provide Claimant with additional compensation, because, due to Employer's policies, Claimant was subject to a specific level of compensation commensurate with her position. (*Id.*) Ms. Judge also testified concerning a policy adopted in 2004 that applied to support employees, including Claimant. (*Id.* at 23a-24a.) The policy provided that "[a]ssignment and transfer of [s]upport employees shall be in accordance with the operational needs of . . . [Employer]."

3

(*Id.* at 24a, 63a.) Ms. Judge explained that employees were notified that Employer's policies were available on Employer's web portal.[1] (*Id.* at 24a.)

The Referee concluded that Claimant was eligible for unemployment compensation benefits because Claimant's transportation problems constituted a necessitous and compelling reason for leaving her employment. In so doing, the Referee made the following findings of fact:

1. The claimant was a part-time warehouse foreperson for . . . [Employer] for approximately 7 years. The claimant's rate of pay was $20.60 per hour. The claimant worked a minimum of 24 hours per week. The claimant's last day of work was September 4, 2014.

2. The claimant was advised that the employer was moving the warehouse from the building in Washington, PA to a more centrally located facility in Grindstone, PA.

3. The claimant issued concerns she had regarding the increase of travel to the new facility.

4. The claimant had a commute of approximately 12 miles from her home to the Washington, PA site. The claimant determined that the commute to the Grindstone facility would be approximately 45 miles.

5. The claimant suggested working longer days, but fewer days per week, still working the minimum of 24 hours per week. The employer could not or would not allow such change.

---

[1] With respect to Employer's transfer policy, Claimant testified:

I'm not trying to say that I didn't know the policy or that, you know, that I don't have to transfer. My issue is just clear and simple. It's far from my house and, you know, between the gas, the time, the wear and tear on the vehicle, for part-time it's just not, it was just not to my benefit to travel that far.

(R.R. at 27a.)

4

6. The employer did not have or offer another position to the claimant within the same general geographic area the claimant had worked.

7. Continuing work was available only if the claimant would transfer to the work site in Grindstone, PA.

(*Id.* at 30a.) The Referee explained that Claimant attempted to resolve her transportation problems, and, therefore, Claimant was eligible for unemployment compensation benefits.

Employer appealed to the Board, which affirmed the Referee's determination and adopted the Referee's findings of fact and conclusions of law. The Board noted that "[C]laimant credibly testified that the additional commute would not have been financially feasible for a part-time job." (*Id.* at 93a.) Employer petitioned this Court for review, and Claimant intervened in this matter.

On appeal,[2] Employer argues that the Board capriciously disregarded evidence that Claimant's resignation based on transportation was pretextual, because Claimant's real reason for resigning her employment was that she did not want to work in a building with juvenile delinquents. Employer also argues that the Board erred in concluding that Claimant had a necessitous and compelling reason to voluntarily quit her employment because: (1) Employer's relocation of the Science Matters program was reasonable; and (2) Claimant was precluded from receiving unemployment compensation benefits due to her knowledge of Employer's transfer policy.

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

5

First, we address Employer's argument that the Board capriciously disregarded evidence that Claimant's resignation was pretextual. Specifically, the Employer contends that Claimant resigned due to her unwillingness to work at the Colonial School rather than her transportation problems. "Capricious disregard of evidence has been defined as a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have disregarded in drawing a conclusion." *Nat'l Keystone Prods. v. Unemployment Comp. Bd. of Review*, 458 A.2d 316, 317 (Pa. Cmwlth. 1983). "When determining whether the Board capriciously disregarded the evidence, the Court must decide if the Board deliberately disregarded competent evidence that a person of ordinary intelligence could not conceivably have avoided in reaching a particular result, or stated another way, if the Board willfully or deliberately ignored evidence that any reasonable person would have considered to be important." *Jackson v. Unemployment Comp. Bd. of Review*, 933 A.2d 155, 156 n.4 (Pa. Cmwlth. 2007). "Disturbing an agency's adjudication for a capricious disregard of evidence is appropriate only where the factfinder has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment." *Wise v. Unemployment Comp. Bd. of Review*, 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015).

Here, the Board did not capriciously disregard competent evidence that Claimant quit due to her unwillingness to work at the Colonial School. Rather, the Board explained that Claimant credibly testified that she voluntarily resigned from her employment due to transportation problems. Although Mr. Martin testified that Claimant told him that she did not want to work in a building with "delinquent" children, the Board was free to accept Claimant's testimony over

6

that of Mr. Martin. *See Duquesne Light Co. v. Unemployment Comp. Bd. of Review*, 648 A.2d 1318, 1320 (Pa. Cmwlth. 1994) ("Where there is a conflict in testimony, credibility determinations and the resolution of evidentiary conflicts are within the [Board's] discretion and are not subject to reevaluation on judicial review."). Thus, we conclude that the Board did not capriciously disregard evidence in rendering its findings of fact.

Next, we will address Employer's arguments that the Board erred as a matter of law. Specifically, Employer argues that the Board erred in concluding that Claimant had a necessitous and compelling reason to voluntarily quit her employment because (1) Employer's relocation of the Science Matters program was reasonable and (2) Claimant had knowledge of Employer's transfer policy. Employer argues that its relocation of Claimant's position was reasonable in order to accommodate additional classrooms, and, therefore, Claimant cannot be entitled to unemployment compensation benefits. Employer also argues that Claimant was precluded from receiving unemployment compensation benefits due to her knowledge of Employer's transfer policy. Claimant counters that she established cause of a necessitous and compelling nature to voluntarily resign her employment because the change of the location of her employment resulted in insurmountable transportation problems for her and she took reasonable steps to resolve the transportation problems to no avail.

Section 402(b) of the Unemployment Compensation Law (Law)[3] provides, in part, that a claimant shall be ineligible for compensation for any week

---

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

7

in which the claimant's unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. *Wasko v. Unemployment Comp. Bd. or Review*, 488 A.2d 388, 389 (Pa. Cmwlth. 1985). A claimant who voluntarily quits her employment bears the burden of proving that necessitous and compelling reasons motivated that decision. *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999). A necessitous and compelling cause for voluntarily leaving employment is one that "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Mercy Hosp. of Pittsburgh v. Unemployment Comp. Bd. of Review*, 654 A.2d 264, 266 (Pa. Cmwlth. 1995).

Generally, in order to establish cause of a necessitous and compelling nature, a claimant must establish that: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) like circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008). "Cause of a necessitous and compelling nature may arise from domestic circumstances and need not be connected with or arise out of the claimant's employment." *Green v. Unemployment Comp. Bd. of Review*, 529 A.2d 597, 598-99 (Pa. Cmwlth. 1987). Transportation problems may constitute cause of a necessitous and compelling nature. *Lee v. Unemployment Comp. Bd. of Review*, 401 A.2d 12, 13 (Pa. Cmwlth. 1979). A claimant's transportation problems,

8

however, "must be so serious and unreasonable as to present a virtually insurmountable problem and the claimant must demonstrate that he or she took reasonable steps to remedy or overcome the transportation problems prior to severing the employment relationship." *Id.*

Thus, Employer's focus on the reasonableness of its actions and whether Claimant was aware of the possibility that her job could be relocated is not relevant to our inquiry. Employer may have been entirely reasonable in its decision, and it may have informed Claimant of the possibility that her job may be moved. The focus, however, is on whether, following the relocation of her job, Claimant had necessitous and compelling reasons to resign voluntarily her employment.[4,5]

---

[4] Employer notes that this Court has held "that an employer is entitled to modify the time, place, and nature of the job originally assigned to an employee if the *changes* are reasonable." *Donaldson v. Unemployment Comp. Bd. of Review*, 496 A.2d 1370, 1371 (Pa. Cmwlth. 1985) (emphasis added). Here, the "change" is requiring Claimant to work at a different job site that is located further from her home. Employer does not argue that it is reasonable to require Claimant to commute the extra distance. Rather, Employer focuses only on whether Employer's decision to relocate the workplace was reasonable, without any consideration of whether the change in the location was reasonable as it relates to Claimant. In *Donaldson*, the issue before the Court was whether a claimant who voluntarily resigned from employment rather than relocate himself and his family more than one hundred miles away to Ohio had necessitous and compelling reasons to voluntarily resign from his employment. We considered whether circumstances existed "which produce[d] pressure to terminate employment that [was] both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Id.* at 1371 (quoting *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 832-33 (Pa. 1977)). In so doing, we did not focus on the employer's reasons for transferring the claimant. Instead, we focused on whether it was reasonable for the claimant to continue working for the employer given the change in job location. We remanded the matter to the Board to determine whether the claimant knew at the time that he took the job that he might have to relocate. Thus, our focus was not on the reasonableness of the employer's decision to relocate the job, but on whether it was reasonable for the employer to require the claimant to relocate. Here, Employer's focus on the reasonableness of its decision to relocate the Science Matters program is misplaced.

**(Footnote continued on next page…)**

9

Such an approach is consistent with our analysis of whether an employer's unilateral change in the terms or conditions of a claimant's employment constitutes necessitous and compelling reasons for voluntarily resigning employment. We have held that "an employer's imposition of a substantial unilateral change in the terms of employment constitutes a necessitous and compelling cause for an employee to terminate her employment." *Brunswick Hotel and Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). In analyzing the "change" in employment, we consider whether the change is "so substantial as to warrant necessitous cause for terminating employment" based on the circumstances of each case. *Id.* at 660. "[S]ubstantiality is measured by the impact on the employee, and whether the change involves any real 'difference' in employment conditions." *McCarthy v. Unemployment Comp. Bd. of Review*, 829 A.2d 1266, 1272 (Pa. Cmwlth. 2003). Moreover, the reasons for the change in employment terms and conditions are irrelevant, as "[i]t is not a defense for the employer to merely establish that it had good reasons for the unilateral change." *Chavez (Token) v. Unemployment Comp. Bd. of Review*, 738 A.2d 77, 82 (Pa. Cmwlth. 1999), *appeal denied*, 761 A.2d 551 (Pa. 2000).

[5] With regard to Employer's argument that Claimant was precluded from receiving unemployment compensation benefits due to her knowledge of Employer's transfer policy, Employer refers to what it dubs as a "prior knowledge rule," purportedly established by this Court's decisions in *Cardwell v. Unemployment Compensation Board of Review*, 465 A.2d 145 (Pa. Cmwlth. 1983); *Donaldson*; and *Thomas v. Unemployment Compensation Board of Review*, 560 A.2d 922 (Pa. Cmwlth. 1989). First, it does not appear that the Court has adopted a "prior knowledge rule," and, even if we had, the cases cited by Employer are easily distinguishable from the instant matter.

In both *Cardwell* and *Thomas*, the nature of the claimants' employment was transient and involved significant travel on a regular basis to distant job sites. In *Cardwell*, we held that "the only way a claimant can overcome such an admission is to show a change in his job conditions or a deception by the employer which causes him to be unaware of conditions at the time he accepts the job which later become onerous." *Cardwell*, 465 A.2d at 147. In *Thomas*, we similarly concluded that the claimants "failed to show that the distance to the new work site is so out of proportion to the original travel conditions as to constitute a material change necessitating their quit." *Thomas*, 560 A.2d at 924. Here, Claimant's position with Employer was not, by its nature, transient. Claimant was employed by Employer for seven years, during which time she commuted a total distance of twelve miles one way from her home to Employer's workplace. Unlike *Cardwell* and *Thomas*, Claimant commuted to one fixed location throughout the duration of her employment with Employer. *Cardwell* and *Thomas* are, therefore, distinguishable from the instant matter.

**(Footnote continued on next page…)**

Here, there is no dispute that the relocation of Claimant's position increased Claimant's commute by sixty-six miles total per work day. As the Board noted, the Claimant credibly testified that such an increase in her commute was not feasible considering the part-time nature of her employment. Moreover, the Referee, noting that a claimant "need only take reasonable steps to overcome a transportation problem," found that Claimant attempted to remedy her problems, including attempting to find suitable public transportation and suggesting that Employer increase the number of hours she would work per day, but her efforts were unsuccessful. (R.R. at 31a (quoting *J.C. Penney Co., Inc. v. Unemployment Comp. Bd. of Review*, 457 A.2d 161, 163 (Pa. Cmwlth. 1983)). Thus, the Board did not err in concluding that Claimant had necessitous and compelling reasons for voluntarily resigning from her employment based upon the findings of insurmountable transportation problems and reasonable efforts on the part of Claimant to resolve the problems.[6]

---

**(continued…)**

*Donaldson* is also distinguishable. *Donaldson* did not involve a mere increase in travel distance to a place of employment. Rather, it involved a claimant's temporary reassignment to Kentucky for thirty-five days followed by a permanent reassignment to Ohio. The instant matter, however, does not concern Claimant's potential relocation of her residence. There is no question that Claimant was not required to move to Grindstone. Rather, the question in the instant matter is whether Claimant's transportation problems constituted a necessitous and compelling reason for her to voluntarily resign from her part-time position. *See*, *e.g. J.C. Penney Co., Inc. v. Unemployment Comp. Bd. of Review*, 457 A.2d 161, 162-63 (Pa. Cmwlth. 1983).

[6] Within this argument, Employer argues that the Board's determination "establishes an alarming precedent for [Employer] and other state educational organizations whose geographic regions include multiple counties." (Employer Br. at 13.) Specifically, Employer contends that Employer would ultimately "be forced to hire employees based on their locations rather than their competency." (*Id.* at 14.) This argument is speculative in that it presumes that the majority of employees faced with an increased commute will elect to file for unemployment **(Footnote continued on next page…)**

Accordingly, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

_____
**(continued…)**

compensation benefits instead of continuing their employment with Employer. As noted above, Claimant testified that it was not economically feasible for her to continue her part-time employment after her position was relocated. It may remain feasible for other employees to continue working for Employer, even if their travel time increases. We, therefore, reject this argument.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Intermediate Unit 1,           :
             Petitioner     :
                             :
           v.                :    No. 161 C.D. 2015
                             :
Unemployment Compensation    :
Board of Review,              :
             Respondent   :

## **O R D E R**

AND NOW, this 6th day of January, 2016, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge