IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The Angelus Convalescent Center, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 943 C.D. 2015 |
| | : | Submitted: November 20, 2015 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI                    FILED: December 17, 2015


          The Angelus Convalescent Center (Employer) petitions for review of an
order of the Unemployment Compensation Board of Review (Board) affirming the
Referee's finding that Theresa L. Wagner (Claimant) was not ineligible for
unemployment compensation benefits under Section 402(b) of the Unemployment
Compensation Law (Law)[1] because she demonstrated a necessitous and compelling

---

[1] Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751–914. Section 402(b) of the Law provides, in pertinent part:

          An employe shall be ineligible for compensation for any week—

**(Footnote continued on next page…)**

**(continued…)**

* * *

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act: Provided, That a voluntary leaving work because of a disability if the employer is able to provide other suitable work, shall be deemed not a cause of a necessitous and compelling nature: And provided further, That no employe shall be deemed to be ineligible under this subsection where as a condition of continuing in employment such employe would be required to join or remain a member of a company union or to resign from or refrain from joining any bona fide labor organization, or to accept wages, hours or conditions of employment not desired by a majority of the employes in the establishment or the occupation, or would be denied the right of collective bargaining under generally prevailing conditions, and that in determining whether or not an employe has left his work voluntarily without cause of a necessitous and compelling nature, the department shall give consideration to the same factors, insofar as they are applicable, provided, with respect to the determination of suitable work under section four (t): And provided further, That the provisions of this subsection shall not apply in the event of a stoppage of work which exists because of a labor dispute within the meaning of subsection (d). Provided further, That no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program or policy: Provided further, That a claimant shall not be disqualified for voluntarily leaving work, which is not suitable employment to enter training approved under section 236(a)(1) of the Trade Act of 1974. For purposes of this subsection the term "suitable employment" means with respect to a claimant, work of a substantially equal or higher skill level than the claimant's past "adversely affected employment" (as defined in section 247 of the Trade Act of 1974), and wages for such work at not less than eighty per centum of the worker's "average weekly wage" (as defined in section 247 of the Trade Act of 1974).

43 P.S. §802(b).

cause for resigning from her position. For the reasons that follow, we affirm the Board's order granting Claimant unemployment compensation benefits.

## I.

Employer terminated Claimant's employment in November 2012, but reinstated her on August 1, 2014, as a part-time housekeeper. She was subject to Employer's drug-testing policy which provided:

> Action for dismissal will be subject to review by the administration through an exit interview. Included among, but not limited to, serious offenses which may result in dismissal without advance notice are the following:
>
> …use of narcotics or refusing test (we test for illegal substances either/or upon hire or randomly thereafter)….

(Reproduced Record [R.R.] at 94a.)

Upon rehire, Claimant underwent a drug test on August 1, 2014, which yielded negative results. Between August and September 2014, Claimant was asked to undergo random drug testing on several additional occasions, with the last request being made on September 24, 2014. On this date, Claimant was advised that she could undergo the testing or go home, but refused testing because she believed she was being harassed.

## II.

Claimant filed an application for benefits with the Unemployment Compensation Service Center (Service Center), which determined that Claimant was not ineligible for unemployment benefits under Section 402(b) of the Law, 43 P.S.

3

§802(b),[2] because she satisfied her burden of proving a necessitous and compelling reason for voluntarily resigning, namely, that she was subjected to unfair treatment. The Service Center also found that Claimant exhausted all alternatives prior to quitting employment insofar as she informed Employer of her reason for leaving, with the reasonable expectation that Employer could have provided an alternative to resolve the situation. Employer appealed to the Board, contending that "Claimant refused to take [a] random drug test and walked off the job." (R.R. at 18a.)

Before the Referee,[3] Claimant testified that she first worked for Employer as a janitor in 2012 but was terminated from her position in November 2012 when the Director of Nursing, Denise Meyers, accused her of stealing money from a patient's room. Claimant stated that she subsequently learned through her co-workers that other employees had, in fact, been responsible for the theft. Claimant sought reinstatement, and Employer rehired her as a housekeeper on August 1, 2014, after which she underwent a drug test on August 8, 2014, which yielded negative results.

---

[2] To establish a necessitous and compelling cause for terminating one's employment, a claimant bears the burden of proving that: "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve her employment." *Brunswick Hotel and Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

[3] At the beginning of the hearing, the Referee advised, "The issue in the case is Section 402(b) of the Law, the voluntary leaving section, whether [Claimant] can demonstrate necessitous and compelling for leaving employment." (R.R. at 63a.) Neither of the parties objected to or recharacterized the statement of relevant issues before the Referee.

According to Claimant, she was assigned to work on the first floor and was expressly advised not to make contact with Ms. Meyers. Nonetheless, on August 11, 2014, Ms. Meyers approached Claimant and requested that she undergo an additional drug test. In response, Claimant testified that she consulted her direct supervisor, Brian Johnson, who advised that Claimant need not undergo a second drug test and assured her that he would discuss the issue with Ms. Meyers.

Still, Claimant testified that on August 18, 2014, Ms. Meyers again asked Claimant to submit to a drug test, after which Claimant consulted Supervisor Johnson a second time. She stated that as before, Supervisor Johnson instructed her not to take the test and advised that he would speak to Yvonne Rose, Employer's Administrator. Around this time, Claimant also recalled that Ms. Meyers instructed Claimant to work upstairs and while doing so, Ms. Meyers advised Claimant and the other housekeepers present that money had gone missing again.

Claimant stated that on September 24, 2014, Ms. Meyers asked Claimant a third time to submit to a drug test, after which Claimant consulted Supervisor Johnson. In response to an inquiry regarding the advice he provided, Claimant detailed:

> He told me he was going to go upstairs and talk to her about it and to go back to work and that's what I did. And about 20 minutes later, he came back downstairs and he said well, I can't do anything with this issue now and I don't know what else to do. You can either go home or clock out—clock out and go home and wait until [Rocco Tarasi, Employer's Executive Director] comes in.

(*Id.* at 67a.)

5

Based upon this advice, Claimant clocked out and went home but returned to Employer's facility later that day with her husband to discuss the situation with Executive Director Tarasi because "[she] was tired of being harassed." (*Id.*) Specifically, she explained:

> I was just tired of [Ms. Meyers] bothering me when I was doing my duties and doing my work and I didn't understand why she kept singling me out to take a drug test when I was told that I wouldn't have to deal with that after we took the first test.

(*Id.*)

During her conversation with Executive Director Tarasi, Claimant informed him of Ms. Meyers' numerous prior requests that Claimant submit to random drug testing. She explained that she refused to take the test sought that day because she felt as though she was "being singled out and harassed" and believed that Ms. Meyers "was just trying to get [Claimant] fired, period, because she didn't want [her] there." (*Id.* at 68a.) According to Claimant, Executive Director Tarasi was previously unaware of the situation but did not offer to undertake any action in response to Claimant's complaints and, therefore, Claimant resigned because she "can't work like this…being treated this way." (*Id.*) She indicated that Ms. Meyers never offered a reason regarding why Claimant had been selected for the additional random drug tests during her first month of employment, despite the fact that her initial test yielded negative results.

During cross-examination, Claimant admitted that on September 24, 2014, Executive Director Tarasi also asked her to take a drug test but she refused and

6

resigned, providing Employer with a letter stating her reasons for doing so. She also stated that she attempted to pursue reasonable alternatives to remain employed by advising Supervisor Johnson of the situation and following his directives.

Claimant also presented the testimony of her husband, William Wagner, who accompanied Claimant during her September 24th meeting with Executive Director Tarasi. He testified that Executive Director Tarasi advised him that the drug testing was random but that Ms. Meyers was responsible for making the random selections. According to Mr. Wagner, Executive Director Tarasi did not know whether Ms. Meyers made the selections in front of anyone else. He failed to produce a written policy during the meeting and did not offer Claimant an alternative to undergoing the testing.

Employer offered a copy of its written drug-testing policy as well as a list of current employees who were subjected to random drug testing in 2014, the dates of those tests, and a list of individuals who Employer referred to outside agencies for testing.[4] Further, Executive Director Tarasi testified that during his meeting with Claimant on September 24th, she refused his repeated requests to submit

---

[4] With regard to the list, Executive Director Tarasi stated that he printed the list the day of the hearing and altered it that morning by blackening the last names of the individuals appearing on it. He also explained that between September 24, 2014, and the day of the hearing, he added names and removed others from the list. Additionally, before the hearing, he made a handwritten note on the list, indicating that Employer requested that Claimant submit to an initial test, but that the test had to be rescheduled because Claimant went home sick. Executive Director Tarasi further admitted that he could and had, in fact, manually altered the document to remind himself of pertinent facts.

to drug testing without providing a reason for her refusal but did not dispute that Claimant underwent prior drug testing upon her rehire.

With regard to Employer's drug-testing policy, Executive Director Tarasi stated that Employer did not terminate Claimant, but rather, Claimant resigned. Nonetheless, Executive Director Tarasi admitted that Claimant could have been terminated for refusing the test. Moreover, Executive Director Tarasi admitted that as per Employer's policy, Employer can test an employee at the time she is hired *or* randomly thereafter, but that regardless, Claimant was tested at the time of her hire *and* thereafter. Claimant's counsel posed the following line of questioning to Executive Director Tarasi:

> CL: So in other words, she was put through both options instead of the one option of being tested either at the time of hire or random, didn't she?
>
> EW1: She was asked to take another test.
>
> CL: Sir…
>
> EW1: Correct.
>
> CL: And in fact, your policy basically only says that you're either tested at the time of hire or randomly, doesn't it?
>
> EW1: Okay.

(*Id.* at 82a.)

Employer also introduced the testimony of Ms. Meyers, who stated that Employer began randomly drug testing its employees in January 2014. Pursuant to

8

its policy, she explained that Employer tests its employees on or around their date of hire and randomly thereafter. She advised that testing is not limited to a single instance. Moreover, she disputed Claimant's testimony that she asked Claimant to submit to three drug tests following her initial test from August to September 2014, admitting that such a practice would be "uncommon." (*Id.* at 85a.) She denied being involved in the random selection process, stating that, instead, she asks the registered nurse on duty and certified nursing assistant supervisor to select individuals for testing. With respect to Claimant's prior termination, Ms. Meyers denied any involvement.

In rebuttal, Claimant testified that on September 24, 2014, Ms. Meyers "got off the elevator with another lady that works in—works under her and she told her—[Ms. Myers] threw me the drug test and said you have to take a drug test." (*Id.* at 92a.) Ms. Meyers disputed this statement.

Based upon the testimony and evidence presented at the hearing, the Referee determined that Claimant satisfied her burden of establishing that she had a necessitous and compelling reason for voluntarily leaving work with Employer pursuant to Section 402(b) of the Law, 43 P.S. §802(b). Noting that "[C]laimant elected to go home, serving to resign employment," the Referee credited Claimant's testimony, finding that between August and September 2014, she was asked to submit to drug testing on several occasions, which Employer admitted was unusual. (R.R. at 104a.) The Referee explained that although Claimant brought the matter to the attention of Executive Director Tarasi with an explanation of why she found Employer's final request inappropriate, Executive Director Tarasi advised Claimant to submit to the test or go home, resulting in Claimant's resignation.

9

Moreover, the Referee reasoned:

> Although it is clear that the [C]laimant violated a directive, the Referee does not find the directive to have been reasonable. The Referee finds the [C]laimant credible in her testimony that she was directed to undergo five drug tests within a one month period. There was no testimony to dispute that of the [C]laimant, in which she credibly asserted that she had not ever tested positive for drugs within her period of employment with this entity.
>
> The Referee finds that the [C]laimant acted in the manner of a reasonable and prudent person by electing to resign rather than to submit to another drug test without good cause. The [C]laimant's burden of proof has been met. Benefits are granted.

(*Id.* at 104a.)

> Employer appealed to the Board, claiming that:

> [E]mployer's policy indicates that random drug tests may be performed. There is no requirement for a cause to request a random drug test …[and]… no limit on the number of random tests or interval between random tests. Claimant refused ALL requests for a random drug test and voluntarily quit rather than take a second drug test. Regardless of how recently a previous test was taken, an employee must follow the employer's policy.

(*Id.* at 110a.) Employer did not, however, challenge the Referee's determination that Claimant resigned from her position.

10

After the Board issued an initial decision which it subsequently vacated,[5] the Board affirmed the Referee's order determining that Claimant was not ineligible for benefits under Section 402(b) of the Law, reasoning that after Claimant was subjected to the initial drug test on August 8, 2014, "[Ms.] Meyers, a supervisor, asked the [C]laimant to undergo random drug tests" on August 11, August 18, and September 24, 2014, all of which Claimant reported to Supervisor Johnson, with the final request culminating in Executive Director Tarasi's directive that Claimant submit to the test or quit. (*Id.* at 136a.) In resolving the conflicting evidence in favor of Claimant, the Board reasoned:

> Although the [E]mployer's policy allows for random testing, the [E]mployer failed to explain why the [C]laimant would be asked to undergo additional random drug testing just weeks after returning a negative drug test. The Board discredits the [E]mployer's argument that the [C]laimant was properly selected for drug testing under the [E]mployer's random testing policy provision. The [E]mployer's [E]xecutive [D]irector, Mr. Tarasi, acknowledged that it would be unusual for an employee to be selected for random drug testing less than one month after the employee passed a drug test administered upon being rehired.

(*Id.* at 138a.)

---

[5] Initially, the Board adopted and incorporated the Referee's decision, determining that because Claimant complied with random drug testing on four occasions within a one-month period and then was asked to take an additional test, Claimant took reasonable steps to preserve the employment relationship by reporting the problem to the Executive Director. After this order was issued, Employer filed a motion for reconsideration on the basis that Claimant did not, in fact, comply with subsequent requests for drug testing. The Board granted the motion and subsequently vacated its initial order and remanded the matter to resolve the factual discrepancy.

11

The Board further determined that by reporting each request to Supervisor Johnson and attempting to discuss the final request with Executive Director Tarasi, Claimant took reasonable steps to preserve the employment relationship, emphasizing that "under these circumstances, even one additional and unfounded drug testing *request*, so soon after the initial drug test, would constitute harassment and cause of a necessitous and compelling nature to quit, particularly after [Supervisor] Johnson and [Executive Director] Tarasi chose not to remedy the situation." (*Id.*) This appeal followed.[6]

### III.

### A.

Employer's primary argument before this Court is that the Board erred by determining that Claimant was eligible for benefits under Section 402(e.1) of the Law[7] because Employer developed a clear substance abuse policy authorizing the dismissal of employees who refuse drug tests and complied with this policy in dismissing Claimant from employment. Conversely, Claimant suggests that

---

[6] Our review is limited to determining whether the Board's findings of fact are supported by substantial evidence in the record, whether errors of law were committed, whether agency procedure was violated, or whether constitutional rights were violated. *Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1153 (Pa. 1993). We have defined "substantial evidence" as such "relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1100 n.3 (Pa. Cmwlth. 2013).

[7] Section 402(e.1) disqualifies employees from receiving benefits for weeks in which unemployment is due to "discharge or temporary suspension from work due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy, provided that the drug test is not requested or implemented in violation of the law or of a collective bargaining agreement." Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, added by Section 3 of the Act of December 9, 2002, P.L. 1330, *as amended*, 43 P.S. §802(e.1).

Employer waived this argument by failing to assert Section 402(e.1) of the Law as a basis for denying benefits below. We agree with Claimant.

Before the Referee, Executive Director Tarasi expressly stated that Employer did not terminate Claimant, but rather, Claimant resigned. He further testified that although Employer's policy enabled it to dismiss an employee for failure to submit to random drug testing, the policy did not *require* dismissal and, in this case, a decision regarding dismissal was not made because Claimant walked off the job. At all times relevant to this action, Employer has maintained that Claimant resigned, but it now seeks to change its legal theory by attempting to contend that she was terminated for refusing to take a drug test. Because, by its plain language Section 402(e.1) of the Law applies only in contexts where an employee is discharged or suspended and such an argument was not raised in any of the proceedings below, Employer is foreclosed from raising it here. *See Schaal v. Unemployment Compensation Board of Review*, 870 A.2d 952, 954–55 (Pa. Cmwlth. 2005) ("A claimant waives review of an issue by failing to raise it before the referee when he had an opportunity to do so."). Further, even if we were to address the issue, the uncontested evidence offered by both parties provides substantial support for the Board's finding that Claimant resigned from her position.

**B.**

Employer also contends that the Board erred "because there is no legal authority to support the Board's position that there is a maximum frequency [with which] an employer can administer random drug tests to an individual, [or] that more than one request over a period of 54 days pursuant to an established random drug testing policy is 'unreasonable.'" (Br. of Petitioner, at 4.)

13

Employer's argument mischaracterizes the Board's finding. The Board did not hold that there exists a maximum frequency with which an employer may perform random drug testing; rather, it determined that Claimant's selection for testing was not random and that even one unfounded request for drug testing under such circumstances justified Claimant's resignation. The case of whether an employee duly selected pursuant to an employer's random testing procedure may be subjected to more than one test in one to two months' time is a different issue than that before us today.

## C.

Additionally, Employer claims that the Board erred in disregarding the chart Employer presented which summarized the names of employees subjected to drug testing and the dates on which those tests occurred. While this argument may be germane to Employer's previous argument that other employees, like Claimant, were asked to submit to numerous drug tests, it is irrelevant to this appeal. As we stated above, the Board did not determine that employees could not be subjected to more than one test, but instead found that Claimant was not *randomly* selected for testing in accordance with Employer's policy. Because the Board determined that the additional testing requests were unfounded in the first instance, it is of no import how many *founded* tests other employees underwent. Essentially, Employer seeks to challenge the Board's factual determination that Ms. Meyers' requests to Claimant were not *bona fide* requests as per Employer's random drug testing policy by showing that other employees were subjected to similar, repeated requests. However, such issues of credibility and evidentiary weight are within the sole discretion of the fact-finder. *See Eduardo v. Unemployment Compensation Board of Review*, 434 A.2d 215, 217 (Pa. Cmwlth. 1981).

14

Accordingly, we affirm the Board's decision that Claimant is not ineligible for unemployment compensation benefits pursuant to Section 402(b) of the Law, 43 P.S. §802(b), because the finding that she had a necessitous and compelling reason for resigning from her position is supported by substantial evidence.

_____
DAN PELLEGRINI, President Judge

Judge McCullough dissents.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Angelus Convalescent Center, :
           Petitioner :
            :
          v. : No. 943 C.D. 2015
            :
Unemployment Compensation :
Board of Review, :
          Respondent :

# **O R D E R**


AND NOW, this 17th day of December, 2015, the order of the Unemployment Compensation Board of Review in the above-referenced matter is affirmed.


DAN PELLEGRINI, President Judge