IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Gunarich, : 
                   Petitioner : 
                              : 
        v. : 
                              : 
Unemployment Compensation : 
Board of Review, :   No. 1146 C.D. 2023
                 Respondent :   Submitted: December 9, 2024

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                FILED: January 8, 2025


         Michael A. Gunarich (Claimant) petitions, *pro se*, for review from the July 14, 2023 order of the Unemployment Compensation Board of Review (Board), which affirmed the decision of an Unemployment Compensation referee (Referee) finding Claimant ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law),[1] which provides that a claimant shall be ineligible for benefits in any week in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

# I. Background

Claimant was employed fulltime as a Maintenance Supervisor by Wire Mesh Products, Inc. (Employer) from January 2011[2] through January 24, 2022. *See* Board Decision and Order mailed July 14, 2023 (Board Decision) at 1, Finding of Fact (F.F.) 1, Certified Record (C.R.) at 125. Toward the later stages of his employment, because Employer was shorthanded, Claimant was performing other job duties in addition to his responsibilities as Maintenance Supervisor, including purchasing and apprentice mentoring. *See* Board Decision at 1, F.F. 2, C.R. at 125.

On January 19, 2022, Claimant verbally reprimanded a subordinate employee (Subordinate) regarding the condition in which Subordinate had left a machine that Subordinate had been using and which Claimant needed to use to train an apprentice. *See* Board Decision at 1-2, F.F. 4-5, C.R. at 125-26. Subordinate left the area after being reprimanded. *See* Board Decision at 2, F.F. 6, C.R. at 126. Claimant was later unable to locate Subordinate, who did not return to work after lunch. *See* Board Decision at 2, F.F. 6, C.R. at 126.

The following day, Friday, January 20, 2022, Employer's plant manager (Plant Manager), Claimant's superior, informed Claimant that he had met with Subordinate the previous day and that Subordinate had indicated that he no longer wanted to be in the same room or building as Claimant and that he was quitting. *See* Board Decision at 2, F.F. 7, C.R. at 126. Plant Manager explained that he had offered Subordinate a position at Employer's other location, but that he did

---

[2] The Board Decision states that Claimant began working for Employer on January 1, 2010, whereas the Referee's decision and Claimant's testimony indicate that he actually started working for employer in January of 2011. *See* Board Decision at 1, F.F. 1, C.R. at 125; Referee's Decision dated June 6, 2022; Notes of Testimony, May 11, 2022, at 7, C.R. at 59. The year Claimant began his employment with Employer has no bearing on the instant decision.

not expect Subordinate to accept the offer. *See* Board Decision at 2, F.F. 8, C.R. at 126. Claimant expressed dissatisfaction at neither being consulted on the offer to Subordinate nor being asked for his side of the story regarding the incident the previous day. *See* Board Decision at 2, F.F. 9, C.R. at 126. Claimant explained to Plant Manager that he felt Subordinate should have been returned to work in the maintenance department the previous day and that Claimant and Subordinate should have been left to resolve their disagreement on their own. *See* Board Decision at 2, F.F. 10, C.R. at 126.

Later on January 20, 2022, during a meeting between Claimant and Plant Manager, Employer's Second Shift Supervisor entered the office and called Claimant a bully. *See* Board Decision at 2, F.F. 11, C.R. at 126. When questioned about the reasoning behind being called a bully, the Second Shift Supervisor explained to Claimant that it was Subordinate who had told others in the workplace that Claimant was a bully, among other things. *See* Board Decision at 2, F.F. 11, C.R. at 126.

Claimant submitted a handwritten letter of resignation to Plant Manager on January 20, 2022. *See* Board Decision at 2, F.F. 12, C.R. at 126. Because he could not read the handwritten letter of resignation, Plant Manager asked Claimant to type the resignation letter on one of Employer's computers. *See* Board Decision at 2, F.F. 12, C.R. at 126. Claimant declined but typed the letter at home and brought it to work and personally handed it to Plant Manager the following Monday. *See* Board Decision at 2, F.F. 13, C.R. at 126. After Plant Manager reviewed the resignation letter, Claimant explained that he did not want to work for an employer that continues to employ someone like Subordinate. *See* Board Decision at 2, F.F. 13, C.R. at 126. Plant Manager then brought Employer's owner, Richard Riva

(Owner), into the meeting, at which time Claimant reiterated his statement. *See* Board Decision at 2, F.F. 13, C.R. at 126.

Claimant asserts that he quit his employment due to dissatisfaction with perceived working conditions and alleged medical/health issues resulting therefrom. *See* Board Decision at 2, F.F. 15, C.R. at 126. However, prior to resigning, Claimant neither discussed with Employer his safety concerns related to working with Subordinate nor informed Employer of any purported medical or health issues. *See* Board Decision at 2, F.F. 16 & 17, C.R. at 126.

After his resignation, Claimant applied for Unemployment Compensation (UC) benefits. The Department of Labor and Industry (Department) UC Service Center determined that Claimant had voluntarily quit his job with Employer without a necessitous and compelling reason and, therefore, denied Claimant UC benefits pursuant to Section 402(b) of the Law. *See* Disqualifying Separation Determination dated March 9, 2022 at 1, C.R. at 22. Claimant appealed the Department's determination to the Referee, who conducted a hearing and denied Claimant's appeal. *See* Notes of Testimony, May 11, 2022 (N.T.), C.R. at 51-89; *see also* Referee's Decision at 1-5, C.R. at 91-95. Claimant appealed to the Board, which affirmed the Referee's Decision by order mailed July 14, 2023. *See* Board Decision, C.R. at 128. Claimant then petitioned this Court for review.[3]

## II. Issues

On appeal, Claimant contends that the Board erred in affirming the Referee's determination that Claimant was ineligible for UC benefits under Section

---

[3] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated. *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

4

402(b) of the Law. *See* Claimant's Br. at 4, 8-19. In short, Claimant argues that the record evidence illustrates that he had necessitous and compelling reasons to quit his employment because he had been asked to perform work outside the scope of his position due to Employer being short staffed and alleged health issues related to his working conditions. *See id.*[4]

[4] Claimant states the questions involved in this matter as follows:

I. DID THE BOARD OF REVIEW ERR IN AFFIRMING THE REFEREE'S DECISION AND DENYING BENEFITS TO [CLAIMANT]? YES

II. DID THE BOARD ERR IN NOT FINDING THE EMPLOYER ADDED DUTIES OF OTHER POSITIONS REQUIRING [CLAIMANT] TO PERFORM OTHER PEOPLES [sic] WORK DUTIES[?]

III. DID THE BOARD OF REVIEW ERR IN FINDING FACTS THAT DO NOT SUPPORT THE RECORD? YES

a. [] Claimant had conversations with [P]lant [M]anager about hiring replacement workers and other maintenance employees that had left employment.

b. [] Claimant was dissatisfied that he was not consulted about the decision to offer [S]ubordinate a job in [E]mployer's Lancaster location.

c. [] Claimant told [P]lant [M]anager that he felt [S]ubordinate should have been sent back to his work area in the maintenance department and that [E]mployer should have let [C]laimant and [S]ubordinate work it out.

d. That [C]laimant quit his employment due to "dissatisfaction" with working conditions and alleged health issues.

e. [Claimant] did not inform [E]mployer of any medical issues prior to resigning.

5

## III. Discussion

### A. Claimant's Ineligibility under Section 402(b) of the Law

Initially, we note that

> the Board, not the referee, is the ultimate fact[-]finding body and arbiter of credibility in UC cases. Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the Board and are not subject to re-evaluation on judicial review. The Board . . . may reject even uncontradicted testimony if it is deemed not credible or worthy of belief. We are bound by the Board's findings so long as there is substantial evidence in the record, taken as a whole, supporting those findings.

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1227-28 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted).

---

f. [Claimant] did not discuss safety concerns about having to work with [S]ubordinate prior to quitting.

g. [Claimant] was performing other job duties, in addition to his [M]aintenance [S]upervisor duties, because [E]mployer was shorthanded.

Claimant's Br. at 4. The Board restated the claims involved herein as follows:

1. Whether the findings of fact challenged by Claimant are supported by substantial evidence where the findings are directly confirmed by the testimony from Claimant and Employer, as well as the documentary evidence in the record?

2. Whether Claimant failed to satisfy his burden of proof to show that he had a necessitous and compelling reason to voluntarily quit his employment?

Board's Br. at 1.

6

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *City of Pittsburgh, Dep't of Pub. Safety v. Unemployment Comp. Bd. of Rev.*, 927 A.2d 675, 676 n.1 (Pa. Cmwlth. 2007) (quoting *Murphy v. Dep't of Pub. Welfare, White Haven Center,* 480 A.2d 382, 386 (Pa. Cmwlth. 1984)). Further, "[t]he fact that [a party] may have produced witnesses who gave a different version of the events, or that [a party] might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Rev.*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994).

Section 402(b) of the Law provides that an employee will be ineligible for UC benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]" 43 P.S. § 802(b). An employee voluntarily terminates employment when he resigns, leaves, or quits the employment without action by the employer. *Roberts v. Unemployment Comp. Bd. of Rev.*, 432 A.2d 646, 648 (Pa. Cmwlth. 1981). However, a claimant who voluntarily quits his employment may still be eligible for UC benefits if he voluntarily quits for cause of a necessitous and compelling nature. *See* 43 P.S. § 802(b). "Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review." *Hohl v. Unemployment Comp. Bd. of Rev.*, 261 A.3d 622, 627 (Pa. Cmwlth. 2021). "A claimant who voluntarily quits his employment bears the burden of proving that necessitous and compelling reasons motivated that decision." *Id.* (citation and internal quotation marks omitted); *see also Solar Innovations, Inc. v. Unemployment Comp. Bd. of Rev.*, 38 A.3d 1051, 1056 (Pa. Cmwlth. 2012) ("A claimant who voluntarily terminates his employment has the burden of proving that a necessitous

7

and compelling cause existed."). A claimant who asserts that he has left his employment for a necessitous and compelling reason must prove: "(1) the existence of circumstances that created real and substantial pressure to leave employment; (2) that such circumstances would compel a reasonable person to leave employment; (3) that he acted with ordinary common sense; and (4) that he made a reasonable attempt to continue his employment." *Hohl*, 261 A.3d at 627; *see also Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Rev.,* 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

As the prevailing party below, Employer is entitled to the benefit of all reasonable inferences drawn from the evidence on review. *See Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

Claimant's reasons for quitting his employment do not entitle him to relief. "Mere dissatisfaction with one's working conditions does not constitute cause of a necessitous and compelling nature for terminating one's employment." *Brunswick Hotel*, 906 A.2d at 660; *see also Stiffler v. Unemployment Comp. Bd. of Rev.,* 438 A.2d 1058, 1060 (Pa. Cmwlth. 1982) ("It is well established law that mere dissatisfaction with wages or work assignments is not cause of a necessitous and compelling nature for an employee's voluntary quit."). It is well accepted that,

> [b]y voluntarily accepting a job which he subsequently quits, an employee admits to the initial suitability of the job with respect to wages and conditions of employment. Unsuitability of work constitutes cause of a necessitous and compelling nature only if an employee proves that he was deceived as to the conditions of the employment claimed to be onerous or that such conditions had changed.

*Stiffler*, 438 A.2d at 1060. Further, "[p]ersonality conflicts, absent an intolerable work atmosphere, do not amount to a necessitous and compelling cause for leaving

8

one's employment." *Wert v. Unemployment Comp. Bd. of Rev.*, 41 A.3d 937, 940 (Pa. Cmwlth. 2012). Likewise, it is well settled that "[a] disagreement with an employer's policies or dissatisfaction with working conditions centered on differences with an employer's management style is not a compelling enough cause to voluntarily quit one's job." *Gioia v. Unemployment Comp. Bd. of Rev.*, 661 A.2d 34, 37 (Pa. Cmwlth. 1995). Additionally, "[w]here [a] claimant has failed to take all necessary and reasonable steps to preserve the employment relationship, he cannot demonstrate a necessitous and compelling reason for leaving his job and is ineligible for benefits." *Hohl*, 261 A.3d at 627; *see also Stiffler*, 438 A.2d at 1060. "In essence, a claimant who willingly resigns from his job must show that he had no real choice but to leave." *Stiffler*, 438 A.2d at 1060.

The evidence adduced at the Referee's hearing in this matter reveals that Claimant left his job with Employer for reasons unrelated to his working conditions or alleged health issues without making reasonable efforts to preserve his employment. *See* N.T. at 7-28; C.R. at 59-80. Claimant testified on his own behalf at the hearing before the Referee in this matter. *See* N.T. at 7-19, C.R. at 59-71. Claimant testified that he had worked for Employer as a Maintenance Supervisor since January of 2011. *See* N.T. at 7, C.R. at 59. Claimant explained that he resigned from his job as a result of the incident on January 19, 2022, in which he raised his voice in reprimanding Subordinate for having left his workstation in disarray, which Claimant explained presented a safety hazard. *See* N.T. at 8-9, 16, C.R. 60-61, 68. Claimant explained that he had telephoned Plant Manager and knocked on Plant Manager's door numerous times on January 19, 2022, in an attempt to ascertain Subordinate's whereabouts after Subordinate did not return to work after lunch. *See* N.T. at 10, C.R. 62. Claimant stated that he did not find out what had happened with

9

Subordinate until the following day, January 20, 2022, when Plant Manager informed Claimant that he had met with Subordinate the day before, that Subordinate had explained the reprimand, that Subordinate had indicated that he no longer wanted to be in the same room or building as Claimant, and that Subordinate was considering quitting his job. *See* N.T. at 10, C.R. 62. Plant Manager explained to Claimant that he had sent Subordinate home to cool off the previous day and had also offered him a position at Employer's other location. *See* N.T. at 10, C.R. 62. Claimant expressed displeasure at having been "kept [] in the dark" about Plant Manager's interaction with and decisions regarding Subordinate and not having been asked for his side of the story regarding the incident. N.T. at 8, 17, C.R. 60, 69. Claimant also expressed displeasure at being called a bully on January 20, 2022, by Employer's Second Shift Supervisor, who explained that Subordinate had characterized Claimant as such, among other things. *See* N.T. at 13-14, C.R. 65-66.

Claimant further testified that he felt threatened by Subordinate's statement that he no longer wanted to be in the same building as Claimant due to Subordinate's past history, to wit, a 2017 incident in which Subordinate threw a circular saw and smashed a welding helmet and for which he was disciplined. *See* N.T. at 10, 16-17, C.R. 62, 68-69. Claimant explained he was also concerned because he had previously observed Subordinate place a knife in his boot when leaving work.[5] *See* N.T. at 11, C.R. 63. Claimant testified that he also worked in the location at which Plant Manager had offered Subordinate a position, and that

---

[5] Claimant explained that he did not report Subordinate to Employer regarding the knife in the boot and did not think about the knife incident again until the January 19, 2022 incident occurred. *See* N.T. at 17, C.R. 69.

Claimant was concerned about possible altercations if and when he would encounter Subordinate at that location in the future. *See* N.T. at 12-13, C.R. 64-65.

Claimant also testified as to his concern that, with Subordinate gone, his work duties would increase. *See* N.T. at 13, C.R. 65. Claimant explained that Employer spoke to him frequently about replacing lost employees, but that Employer had been unsuccessful in its attempts to replace such workers. *See* N.T. at 14, C.R. 66. As a result of Employer's manpower issues, Claimant's work duties had increased to include purchasing and mentoring responsibilities in addition to his maintenance responsibilities. *See* N.T. at 13, C.R. 65. Claimant stated that he was not given any indication that Subordinate's position would be replaced in the meeting with Plant Manager on January 20, 2022. *See* N.T. at 14, C.R. 66. However, other than acknowledging Employer's promise that they were looking for replacement workers and the additional duties required of him as a result of Employer's inability to secure replacement employees, Claimant did not discuss working different shifts with Employer or otherwise ask for accommodations prior to quitting. *See* N.T. at 14, 18, C.R. 66, 71.

Claimant also testified that his increased workload caused him stress and anxiety and interrupted his sleep patterns for which he sought medical attention. *See* N.T. at 15, C.R. 67. Claimant indicated that he had intermittent sleepless nights prior to the January 19, 2022 incident with Subordinate, but that his sleep disturbances increased thereafter. *See* N.T. at 15, C.R. 67. Claimant explained that he has not received any treatment for his mental issues beyond medication, which medication Claimant explained allows him to control his issues. *See* N.T. at 15, C.R. 67. Claimant further acknowledged that he did not receive medication for anxiety until after his resignation. *See* N.T. at 17, C.R. 69; *see also* Letter from Davenshire

11

Medical Center dated May 4, 2022, Hearing Exhibit 5, C.R. at 88 ("[Claimant] has been prescribed Lorazepam due to anxiety after he resigned from his previous job."). Claimant testified that he told Employer that he was stressed, but did not otherwise raise any medical or mental health issues with Employer prior to resigning. *See* N.T. at 17-18, C.R. 69-70.

Plant Manager testified on Employer's behalf at the hearing before the Referee. *See* N.T. at 19-25, C.R. at 71-77. Plant Manager[6] explained that Claimant voluntarily resigned his position on January 20, 2022, after Plant Manager informed Claimant that Subordinate had come to him the previous day to discuss, and possibly quit, over the incident that had occurred between Claimant and Subordinate. *See* N.T. at 20, C.R. 72. Plant Manager testified that he told Claimant that Employer would move quickly to replace Subordinate in Claimant's location because Employer understood help was needed there. *See* N.T. at 24, C.R. 76. Claimant, however, was dissatisfied that Plant Manager had offered Subordinate a position at another Employer location. *See* N.T. at 20-21, C.R. 72-73. Plant Manager explained that Claimant felt slighted by the way Employer/Plant Manager handled the incident. *See* N.T. at 21, C.R. 73. Claimant felt Subordinate should have been returned to work in the maintenance department and that Plant Manager should have allowed Claimant and Subordinate to work through the situation on their own. *See* N.T. at 21, C.R. 73. Plant Manager explained that Claimant brought him a handwritten resignation letter on January 20, 2022, and that he had requested that Claimant take a moment to type the letter, as it was illegible. *See* N.T. at 21, C.R. 73. Claimant declined, but returned the following Monday with a typed version of the letter that

---

[6] Plant Manager has been working for Employer in various capacities for 20 years. *See* N.T. at 20, C.R. at 72.

12

explained that Claimant did not want to work for a company that would continue to employ an individual like Subordinate. *See* N.T. at 21, C.R. 73; *see also* Resignation Letter dated January 20, 2022 (Resignation Letter), C.R. at 86. Plant Manager testified that he brought Claimant to Owner, to whom Claimant reiterated his position and desire to resign.[7] *See* N.T. at 21, C.R. 73. Plant Manager further explained that, prior to resigning, Claimant had not raised any safety concerns with Employer, nor had he informed Employer of any health concerns/issues. *See* N.T. at 22, C.R. 74. Further, Plant Manager noted that he had wanted to terminate Subordinate in 2017 after the incident during which Subordinate threw the saw and otherwise destroyed property, but Claimant had stepped in and convinced Plant Manager that Subordinate was worth keeping on as an employee. *See* N.T. at 22, C.R. 74. Additionally, Plant Manager was aware that Claimant was doing purchasing work for Employer, but he was not sure when Claimant had taken on those responsibilities. *See* N.T. at 23, C.R. 75. Likewise, Plant Manager acknowledged asking Claimant to help mentor an apprentice tool maker. *See* N.T. at 23, C.R. 75. However, Plant Manager explained that these additional duties were not the reason that Claimant provided for his resignation. *See* N.T. at 25, C.R. 77; *see also* Resignation Letter, C.R. at 86.

Owner also testified on Employer's behalf at the hearing. *See* N.T. at 26-28, C.R. at 78-80. Owner explained that he was present when Claimant submitted his resignation to Plant Manager and that Claimant quit because Employer transferred Subordinate without consulting Claimant. *See* N.T. at 26, C.R. at 78. Owner testified that Claimant did not raise any medical or health concerns when he

_____

[7] In his testimony, Plant Manager noted that Claimant had already resigned at the point he reiterated his resignation to Owner. *See* N.T. at 21, C.R. 73.

13

resigned. *See* N.T. at 26, C.R. at 78. Owner further explained that Claimant did not provide Employer an opportunity to address Claimant's concerns regarding Subordinate's work habits or the purported safety hazard Claimant claimed was presented by the condition in which Subordinate left his work area. *See* N.T. at 26, C.R. at 78.

Based on this evidence presented, the Board denied Claimant benefits under Section 402(b) of the Law, noting as follows:

> The Board resolves conflicts in the testimony in favor of [E]mployer. The Board does not credit [C]laimant's testimony that he felt threatened by [S]ubordinate['s] comment or that he had safety concerns about working with [S]ubordinate. Moreover, the Board does not credit [C]laimant's testimony that he complained to [E]mployer about the stress of his job. [C]laimant did not establish that adequate health reasons existed for leaving his employment when he did, as he was treated for anxiety after quitting. [C]laimant's mere dissatisfaction that he was not included in the management decision to offer [S]ubordinate a transfer to [Employer's other location] is not [a] necessitous and compelling reason for leaving his employment. The working conditions with [S]ubordinate were not intolerable considering [C]laimant's statement that [E]mployer should have returned [S]ubordinate to working in the maintenance department.

Board Decision at 3-4, C.R. at 127-28.

We find no error in the Board's determination. As finder of fact and arbiter of credibility in this matter, the Board was within its prerogative to discredit Claimant's testimony. *See Waverly*, 173 A.3d at 1227-28. Having done so, the Board was left with the documentary evidence and the testimony of Plant Manager and Owner upon which to base its determination. The testimony of these witnesses

14

and the documentary evidence illustrate that Claimant failed to communicate his concerns about Subordinate's work issues and/or his alleged job-related medical issues to Employer prior to Claimant's resignation. The evidence further illustrates that Claimant made no effort with Employer to preserve the employment relationship. Accordingly, based on this record, substantial evidence exists to support the Board's finding that Claimant did not leave work for a cause of a necessitous and compelling nature.

To the extent Claimant lodges challenges to the sufficiency of certain specific findings of fact made by the Board,[8] we observe that the evidence as described and discussed *supra* support each of the Board's findings of fact in this matter. Accordingly, Claimant's specific challenges to the Board's various findings of fact afford Claimant no relief.

---

[8] Claimant challenges the Board's findings of fact No. 2 (that Claimant was performing other job duties outside the Maintenance Supervisor position as a result of Employer being shorthanded), No. 3 (that Claimant had conversations with Plant Manager about hiring replacement workers), No. 9 (that Claimant was dissatisfied that he was not consulted about the decision to offer Subordinate a position at a different Employer facility), No. 10 (that Claimant told Plant Manager that he felt Subordinate should have been returned to work in the maintenance department and that Claimant and Subordinate should have been left to work out their issues on their own), No. 15 (that Claimant quit his job due to dissatisfaction with working conditions and alleged health issues), No. 16 (that Claimant did not inform Employer of any medical issue prior to resigning), and No. 17 (that Claimant did not discuss any safety concerns with Employer prior to quitting). *See* Claimant's Br. at 16-19. Additionally, and somewhat incongruently, Claimant also alleges further error on the Board's part for having failed to find as a fact that Employer added duties from other positions to Claimant's duties as Maintenance Supervisor. *See* Claimant's Br. at 15-16.

## IV. Conclusion

For these reasons, we affirm the Board Order affirming the Referee's Decision and determining that Claimant was ineligible for UC benefits under Section 402(b) of the Law.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Gunarich,                          :
                            Petitioner         :
                                               :
            v.                                 :
                                               :
Unemployment Compensation                      :
Board of Review,                               :      No. 1146 C.D. 2023
                            Respondent          :

# **O R D E R**

AND NOW, this 8th day of January, 2025, the July 14, 2023 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge